07-0263-cr (L)
U.S.A. v. Jackson

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

August Term, 2010

(Argued: September 27, 2010          Decided: August 4, 2011)

Docket Nos. 07-0263-cr(L), 08-4838-cr(CON)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA,

*Appellee*,

v.

FREDERICK E. JACKSON, also known as FREDERICK ROWE,

*Defendant - Appellant*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Before: LEVAL, LYNCH, *Circuit Judges*, KORMAN, *District Judge*[1].

Defendant appeals convictions in the United States District Court for the Southern District of New York (McKenna, *J.* and Jones, *J.*) for conspiracy to distribute more than 50 grams of crack cocaine (21 U.S.C. § 846), causing death by use of a firearm during a drug trafficking crime (18 U.S.C. § 924(j)), murder in course of drug conspiracy (21 U.S.C. § 848(e)(1)(A)), and possession of ammunition by a convicted felon (18 U.S.C. § 922(g)(1)). Defendant contends that he was entitled to acquittal on some of those counts by reason of double jeopardy and the insufficiency of the evidence, to resentencing on other counts, and to a new trial.  Affirmed.

---

[1] The Honorable Edward R. Korman, United States District Judge for the Eastern District of New York, sitting by designation.

JOHN FRANCIS KALEY, Doar Rieck & Mack, New York, NY (Charles F. Wilson, on the brief, Nevins & Nevins, East Hartford, CT), *for Appellant.*

JUSTIN ANDERSON, Assistant United States Attorney, New York, New York (Preet Bharara, United States Attorney for the Southern District of New York, Michael A. Levy, Assistant United States Attorney, New York, New York, on the brief), *for Appellee.*

LEVAL, *Circuit Judge*:

The Defendant, indicted as Frederick Jackson and also known as Frederick Rowe (hereinafter "Rowe"), appeals from convictions in the United States District Court for the Southern District of New York (McKenna, *J*. and Jones, *J*.) for conspiracy to distribute 50 or more grams of crack cocaine (21 U.S.C. § 846), causing the death of another person by use of a firearm in furtherance of a drug trafficking offense (18 U.S.C. § 924(j)), murder in course of drug conspiracy (21 U.S.C. § 848(e)(1)(A)), and possession of ammunition by a convicted felon (18 U.S.C. § 922(g)(1)). Defendant contends that he was entitled to acquittal on some of those counts, by reason of double jeopardy and insufficiency of the government's evidence, to resentencing on others, and to a new trial. We reject his arguments and affirm the judgments.

## EVIDENCE AT TRIAL

Rowe led a drug organization that distributed crack cocaine in the Bronx from 1996 until his arrest in mid-2002. During this time Rowe engaged in conflict over territory with Ilar Chester, a rival drug dealer. The conflict escalated, pitting Rowe and Chester in a gun battle in December 2000. Rowe shot Chester in the leg and left the scene. The police discovered the

wounded Chester with a firearm and a cocaine supply. Chester was imprisoned until February 2002.

The conflict resumed upon Chester's release. On May 30, 2002, Rowe summoned Cashine Jordan and asked Jordan whether he was "ready." Shortly thereafter, Rowe gave Jordan a handgun and instructions for its use. Rowe, Jordan, Anthony Battle, and Ramel Shepherd drove in a car and spotted Chester sitting with another man named Robert Mason. Rowe said to Jordan: "There they go right there." Rowe exited the car, which then dropped Jordan and Shepherd near where Chester was sitting. Jordan shot Chester in the chest and tried to fire additional shots, but the gun jammed. Chester collapsed and died.

After responding at the scene, the police received consent from the father of Rowe's girlfriend Rosemary Varona to search Varona's bedroom. This search revealed ammunition that matched a shell casing found at the scene. The police arrested Rowe for Chester's murder two days later, on June 1, 2002.

While in prison after his arrest, Rowe made telephone calls, which were recorded by the institution. In these calls, Rowe attempted to dissuade others from speaking with law enforcement and made damaging admissions.

**PROCEEDINGS**

Under a superseding indictment, Rowe was charged with: 1) conspiracy to possess and distribute 50 or more grams of crack cocaine, in violation of 21 U.S.C. § 812, 841(a)(1), 841(b)(1)(A), and 846; 2) possession and use of a firearm in the course of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(iii) and 924(c)(2); 3) causing a death by use of a

3

firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. §§ 924(j)(1) and 2; 4) murder committed in the course of the drug conspiracy in violation of 21 U.S.C. § 848(e)(1)(A), and; 5) possession of ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1).

Because successive juries failed to reach verdicts on some of the counts, three trials were required before verdicts were rendered on all of the counts. In the first trial, before Judge McKenna, Rowe was found guilty of conspiracy to distribute more than 50 grams of crack cocaine under 21 U.S.C. § 846 and possession of ammunition by a felon under 18 U.S.C. § 922(g). The jury failed to reach verdicts on the other counts. Rowe was sentenced principally to 384 months imprisonment on the drug conspiracy count and 120 months, concurrent, on the count charging possession of ammunition. In the second trial, the jury failed to agree on any of the open counts. In the third trial, which was held before Judge Jones, the jury found Rowe guilty on all three of the remaining counts.

Rowe filed a post-trial motion to vacate the conviction on the grounds that the district court improperly excluded portions of recorded jailhouse conversations, which portions he contended were needed for completeness. In a second post-trial motion, he claimed that the evidence of his intent to commit murder was inadequate, and that he suffered ineffective assistance of counsel. All of the motions were denied as without merit; the second motion was also denied as untimely.

Judge Jones sentenced Rowe to 540 months for the § 924(j) offense of causing death by use of a firearm during and in relation to a drug trafficking crime. This count was merged with the lesser included offense of the use of a firearm in connection with drug trafficking crime (18

4

U.S.C. § 924©)).  Rowe also was sentenced to 540 months for the § 848(e)(1)(A) offense of murder in course of drug conspiracy.  The court provided that the sentences would be concurrent with one another and with the remainder of the sentence imposed after the first trial.

**DISCUSSION**

**I. Sufficiency of Evidence for the Murder Conviction**

Rowe contends the evidence in the third trial was insufficient to support a murder conviction.  We may overturn the conviction only if no "rational trier of fact" could have found that the government established the required elements of the crime beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  Rowe argues that the government failed to meet this standard because Jordan, who shot and killed Chester, testified that Rowe never explicitly instructed that he kill Chester.

The district court correctly rejected this claim.  On a claim of insufficiency of the evidence, the evidence is viewed in the light most favorable to the government.  *United States v. Hassan*, 578 F.3d 108, 122 (2d Cir. 2008).  The evidence was sufficient to support the finding that Rowe instructed Jordan to kill Chester, even if Rowe gave the instruction by inference rather than explicit words.  The evidence showed that Rowe praised Jordan for other killings he had done, supplied him with the weapon, showed him how to release the safety on the weapon, asked if he was ready, and drove with him to find Chester and pointed him out.  Jordan exited the car and shot and killed Chester.  A jury could reasonably conclude that Rowe had inferentially instructed Jordan to kill Chester.

**II. Introduction of Jailhouse Telephone Conversations**

Rowe claims Judge Jones erred in the third trial by rejecting his offer of portions of his jailhouse telephone conversations beyond those introduced by the government. Rowe argues that these excluded portions were necessary for completeness. We review Judge Jones' decision to exclude these portions of the tapes for abuse of discretion. *Caruolo v. John Crane, Inc.*, 226 F.3d 46, 54 (2d Cir. 2000).

The hearsay rule barred Rowe from introducing his own prior statements. Nonetheless, when the government introduced portions of Rowe's statements as admissions of an adverse party, Fed. R. Evid. 801(d)(2)(a), Rowe could then introduce other portions needed for a full understanding of the portions introduced by the government. Fed. R. Evid. 106 ("an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it."); *see also United States v. Castro*, 813 F.2d 571, 575-76 (2d Cir. 1987) (under the completeness doctrine, the "omitted portion of a statement must be placed in evidence if necessary to explain the admitted portion, to place the admitted portion in context, to avoid misleading the jury, or to ensure fair and impartial understanding of the admitted portion.").

Rowe argues that the district court improperly rejected his offer of a portion of Exhibit 301, a conversation between himself and his girlfriend Kathy Ortega. In the portion introduced by the government, Rowe told Ortega to tell Battle, who had retained the murder weapon after the killing, to "keep it tight," meaning keep quiet. Rowe sought to introduce a further portion of the conversations in which he told Ortega to tell Battle "I'm not mad at him." The district court excluded the evidence. We see no reason why this statement by Rowe would have assisted the

jury in a complete and proper understanding of the incriminating portions of the conversation offered by the government in which Rowe instructed Battle not to talk. The court was within its discretion to exclude this hearsay.

Rowe also contends that the court improperly excluded a portion of Exhibit 306, a tape recording of Rowe's telephone conversation from jail with Battle's mother. In the portion of the tape offered by the government, Rowe became agitated and said he "really need[ed] to talk to [Battle]" when told by Battle's mother that Battle had been arrested in a car with a gun. The relevance of the government's evidence depended on the fact that Jordan had testified that Battle had kept the murder weapon after Chester's murder. According to the government, the conversation revealing Rowe's anxiety upon learning that Battle had been arrested with a gun showed Rowe's worry that the gun found by the police was the murder weapon.

The district court declined Rowe's offer of other portions of the same conversation in which Rowe told Battle's mother that Battle had "snak[ed]" him. Rowe contends that this segment showed that his agitation was attributable to other reasons than concern about Battle's possession of the murder weapon. The district court determined that this portion of the conversation did not clarify the portion of the conversation introduced by the government. This determination was within the district court's discretion. The two portions of the conversation were separate. In the earlier part of the conversation Rowe directly attributed his agitation to learning from Battle's mother that Battle had been arrested with a gun.[2] In any event, in view of

---

[2] Upon hearing from Battle's mother that Battle had been arrested with a gun in the car, Rowe responded, "Oh, put him on phone please? . . . Everything is messed up, Ma. Um. . . . [A]fter you just told me that, you got me . . . you got me. After you told me that he got arrested, that just got me kinda tight . . . [D]idn't you say that he had a, a thing in the car?"

the small importance of this conversation as a part of the government's case and the strength of the other evidence against Rowe, the error, if any, was harmless.

**III. District Court's Questioning of Witness Jordan**

Rowe argues that Judge Jones abused her discretion in asking questions of witness Jordan. Rowe focuses particularly on the court's question to Jordan whether he had heard from Rowe after the shooting, which he contends led to inadmissable prejudicial material. We reject this claim. The court's questions sought clarifications, and did not suggest bias in favor of the government. *See United States v. Pisani*, 773 F.2d 397, 403 (2d Cir. 1985) ("[T]he questioning of witnesses by a trial judge, if for a proper purpose such as clarifying ambiguities, correcting misstatements, or obtaining information needed to make rulings, is well within" the trial court's "active responsibility to insure that issues are clearly presented to the jury."). Moreover, to the extent that the questioning inadvertently elicited hearsay about Rowe's arrest, the court instructed the jury to disregard it. Any residual prejudice from the witness's statement was negligible, because the information regarding Rowe's arrest was already before the jury.

**IV. Ineffective Assistance of Counsel**

Rowe argues that he received inadequate and ineffective representation during his third trial. Rowe claims that his lawyer did not meet with him sufficiently to plan a trial strategy, which caused the lawyer to make unfulfillable promises in his opening statement. The record is insufficient to allow adjudication of this claim. Rowe may raise this claim by a petition under 28 U.S.C. § 2255.

8

**V. Double Jeopardy Claims**

In the first trial, Rowe was tried for a narcotics conspiracy under 21 U.S.C. § 846, as well as under § 848(e)(1)(A) for a murder in the course of the narcotics conspiracy. He was convicted and sentenced for the narcotics conspiracy. The jury, however, deadlocked on the murder count, so that he was retried, and upon a second jury deadlock, retried a third time on the murder charge. In the third trial, he was convicted under § 848(e)(1)(A) of murder in the course of the narcotics conspiracy.

Rowe contends that the charge of narcotics conspiracy under § 846 is a lesser included offense within the charge under § 848(e)(1)(A) of murder in the course of the narcotics conspiracy. Otherwise put, he contends that § 848(e)(1)(A) does not create a separate offense, but rather justifies additional punishment for the crime specified in § 846. He argues that, once he was convicted of the lesser included offense, the Double Jeopardy Clause of the Fifth Amendment precluded his further trials and eventual conviction on the greater inclusive offense.

Under the Supreme Court's precedents, it is not clear whether in the circumstances of this case, the two sections should be viewed as a greater and a lesser-included offense, or as two separate offenses. *Compare Garrett v. United States*, 471 U.S. 773 (1985), *with Rutledge v. United States*, 517 U.S. 292 (1996); *see also United States v. Honken*, 541 F.3d 1146, 1155-58 (8th Cir. 2008). We need not answer the question because in either case, Rowe's argument fails.

Here, the government did not wait to initiate prosecution for murder until after Rowe's trial and conviction for the drug conspiracy. Rather, he was tried on the two counts simultaneously in the first trial. The second and third trials for the murder occurred only because

9

the juries failed to agree on a verdict with respect to this count in the first and second trials. Accordingly, the second and third trials on the murder count are properly seen as continuations of the initial trial, and did not expose Rowe to double jeopardy. Retrying a defendant after a jury's failure to render a verdict does not contravene the Double Jeopardy Clause. *See Richardson v. United States*, 468 U.S. 317, 324 (1984) ("[W]ithout exception, the courts have held that the trial judge may discharge a genuinely deadlocked jury and require the defendant to submit to a second trial. This rule accords recognition to society's interest in giving the prosecution one complete opportunity to convict those who have violated its laws." (*quoting Arizona v. Washington*, 434 U.S. 497, 509 (1978))).

Rowe relies on the Supreme Court's recent ruling in *Yeager v. United States*, 129 S. Ct. 2360 (2009), to distinguish this case from the precedent in *Richardson*, 468 U.S. 317. In *Yeager*, in the initial trial the defendant was acquitted on fraud counts and the jury failed to render a verdict on further counts alleging insider trading on material undisclosed information. The government then obtained a new indictment reasserting some, but not all, of the insider trading counts. The defendant moved to bar the trial on the insider trading charges, arguing that the acquittals on the fraud counts barred the government from proving elements necessary to establish the insider trading counts. The district court rejected the defendant's argument that a conviction on the insider trading counts was not logically compatible with the acquittal on the fraud count. It therefore rejected the defendant's claim of double jeopardy. The court of appeals accepted the defendant's theory that a conviction on the insider trading count was not compatible with his acquittal on the fraud counts. The court of appeals, nonetheless, rejected the claim of double jeopardy, reasoning that because a rational jury's acquittal on the fraud counts would

necessarily have also acquitted on the insider trading counts, the jury's failure to reach a verdict on the latter counts made it impossible to understand the jury's analysis of those counts, and concluding that the government should be free, after the mistrial, to retry them. The Supreme Court reversed. Provisionally accepting (without deciding) the court of appeals' conclusion that acquittal on the fraud counts was not compatible with conviction on the insider trading counts, the Court ruled that, as in *Ashe v. Swenson*, 397 U.S. 436 (1970), "the Double Jeopardy Clause precludes the Government from relitigating any issue that was necessarily decided by a jury's acquittal in a prior trial." *Yeager*, 129 S. Ct. at 2366. The Supreme Court remanded to the circuit court with instructions to the effect that, if the court of appeals adhered to its earlier decision that acquittal on the fraud charges was not compatible with conviction on the insider trading charges, the subsequent trial should be barred. The Court reasoned that the bar of the Double Jeopardy Clause arose not from the interest to protect the defendant from being placed twice in jeopardy (while allowing the government "one complete opportunity to convict"), but rather from its interest to "preserv[e] the finality of the jury's judgment" by giving effect to the jury's determinations of the issues it decided in the first trial. *Id*. The Court concluded, "[T]hus, if the possession of insider information was a critical issue of ultimate fact in all of the charges against petitioner, a jury verdict that necessarily decided that issue in his favor protects him from prosecution for any charge for which that is an essential element." *Id.* at 2368-69.

The ruling in *Yeager* is of no avail to Rowe. Had the jury acquitted Rowe of the § 846 conspiracy, we would then need to determine whether that acquittal could be logically reconciled with subsequent conviction under § 848(e)(1)(A). There is, however, no logical incompatibility between the earlier conviction on the § 846 count and a conviction on the murder count. Where

11

the defendant is convicted on both counts, assuming they were properly viewed as a greater and a lesser-included offense, it may be that the lesser conviction must be subsumed in the greater – a contention that Rowe has not advanced here. But in this circumstance, where, unlike *Yeager*, the jury in the first trial convicted the defendant on the lesser offense and failed to reach a verdict on the greater offense, the Double Jeopardy Clause does not bar the government from getting "one complete opportunity" to achieve a conviction on the greater offense, by retrial of that count. *Id.* at 2366; *see Richardson*, 468 U.S. at 324.[3]

Rowe further argues that, even if a second trial after a hung jury did not violate double jeopardy, a third trial did. He is mistaken. *See United States v. Castellanos*, 478 F.2d 749, 753 (2d. Cir. 1973) (retrial in the wake of two mistrials due to jury deadlocks does not violate the defendant's rights under the Double Jeopardy Clause).[4]

---

[3] Rowe also contends that he should not have been further tried and sentenced for murder because Judge McKenna had taken the murder conviction into account in sentencing him on the narcotics conspiracy charge. The claim is factually and legally meritless. Although Judge McKenna did refer to the general "violence on the streets" associated with Rowe's narcotics operation, he explicitly refused to consider the murder as an aggravating sentencing factor. And the Double Jeopardy Clause in any event would not prohibit prosecution of the charge even if it had been considered in the earlier sentencing. *See United States v. Gallego*, 191 F.3d 156, 169-70 (2d Cir. 1999) (*abrogated on other grounds by Crawford v. Washington*, 541 U.S. 36 (2004).

[4] It is not clear whether Rowe raises the same double jeopardy arguments in relation to his conviction in the third trial under 18 U.S.C. § 924(j), following his conviction in the first trial under 21 U.S.C. § 846. If so, these contentions fail for the same reasons.

## VI. Sentencing Arguments

### A. Sentencing Guidelines for the Crack Convictions

Rowe claims that his 384 month sentence for the crack cocaine conspiracy under 21 U.S.C. § 846 should be vacated. He argues that: 1) subsequent changes in the sentencing guidelines mandate resentencing; and 2) the sentencing guidelines under which he was sentenced lack a rational basis. Because Rowe did not raise the lack of rational-basis argument at trial at the time the sentence was imposed, we review the contention for plain error. Rowe therefore must show an error that was plain and affected his "substantial rights." *United States v. Keigue*, 318 F.3d 437, 441 (2d. Cir. 2003). His argument relating to the effect of a subsequent change in the guidelines could not have been raised at the time of sentencing. We therefore review that contention for harmless error.

We reject both claims. The duration of the crack sentence is rendered inconsequential by the longer concurrent murder sentences. *See United States v. Outen*, 286 F.3d 622, 640 (2d Cir. 2002) ("[A]n erroneous sentence on one count of a multiple-count conviction does not affect substantial rights where the total term of imprisonment remains unaffected . . . ."). Any error in the imposition of Rowe's sentence of 384 months for the crack conspiracy did not affect his substantial rights and was, indeed, harmless, because this sentence runs concurrently with the two sentences of 540 months for the killing of Chester.

### B. Physical and Emotional Abuse

Rowe argues that Judge Jones improperly declined to grant a downward sentencing departure in response to the physical abuse and emotional cruelty he suffered as a child. District

13

courts have broad discretion whether to depart from the sentencing guidelines. Claims that the district court erred in refusing to depart are not cognizable on appeal in the absence of substantial indication that the district judge believed she lacked authority to depart or an indication that a violation of the law occurred. *See United States v. Scott*, 387 F.3d 139, 143 (2d Cir. 2004) ("There are exceptions [to the presumption of nonreviewability] where the defendant shows that a violation of law occurred, that the Guidelines were misapplied, or that the refusal to depart was based on the sentencing court's mistaken conclusion that it lacked the authority to depart.") (quotation omitted). There is no such indication in the record.

**C. Other Claims**

Rowe argues that the district court failed to consider reducing his sentence for time previously served. Judge Jones, however, stated that the sentence was imposed in consideration of time previously served: "I did take that into consideration in calculating it." Rowe also contends he should be resentenced because the district court incorrectly believed it was required to adhere to the guidelines. There is no merit to this claim. In fact, in imposing a 540 month sentence in place of the life term specified by the sentencing guidelines, Judge Jones did impose a non-guidelines sentence.

**CONCLUSION**

The judgments of conviction on all counts are AFFIRMED.

14