# FRITZGERALD DIEUDONNE *v.* COMMISSIONER OF CORRECTION
## (AC 33616)

Lavine, Alvord and Sheldon, Js.

Argued November 16, 2012—officially released March 5, 2013

*Michael Proto*, assistant state's attorney, with whom, on the brief, were *Kevin T. Kane*, chief state's attorney, and *Jose Alberto Maldonado*, certified legal intern, for the appellant (respondent).

*Damon A. R. Kirschbaum*, for the appellee, (petitioner).

*Opinion*

ALVORD, J. The respondent, the commissioner of correction, appeals from the judgment of the habeas court granting in part an amended petition for a writ of habeas corpus filed by the petitioner, Fritzgerald Dieudonne. The respondent claims that the habeas court improperly concluded that the ineffective assistance of the petitioner's trial counsel prejudiced the petitioner in accordance with the standard set forth in *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). We disagree and, accordingly, affirm the judgment of the habeas court.

In the underlying criminal matter, the petitioner was charged with two counts of assault of public safety personnel, one count of conspiracy to sell narcotics by a person who is not drug-dependent and one count of interfering with an officer. At the close of the state's case-in-chief, the trial court granted the petitioner's motion for a judgment of acquittal on the narcotics charge. After a jury trial, the petitioner was found guilty of one count of assault of public safety personnel in violation of General Statutes § 53a-167c,[1] with respect

[1] General Statutes § 53a-167c provides in relevant part: "A person is guilty of assault of public safety . . . personnel when, with intent to prevent a reasonably identifiable peace officer . . . from performing his or her duties, and while such peace officer . . . is acting in the performance of his or her duties . . . such person causes physical injury to such peace officer . . . ."

to Sergeant James Matheny, but, due to the inability of the jury to reach a unanimous verdict, the court declared a mistrial on the second count of assault of public safety personnel with respect to Officer Christopher Baker. The petitioner also was found guilty of one count of interfering with an officer in violation of General Statutes § 53a-167a. The petitioner appealed from the judgment of conviction to this court, and this court remanded the case to the trial court "with direction to vacate the sentence on the count of interfering with an officer and to combine the conviction of interfering with an officer with that of assault of public safety personnel." *State* v. *Dieudonne*, 109 Conn. App. 375, 380, 952 A.2d 69, cert. denied, 289 Conn. 924, 958 A.2d 154 (2008). This court reached this conclusion because the trial court "imposed multiple punishments for the same offense in violation of [the petitioner's] federal and state constitutional rights to be free from double jeopardy." Id., 378.

In that decision, this court set forth the following facts: "On October 26, 2004, the Stamford police department received an anonymous tip indicating that three black males were selling drugs on the corner of Ludlow and Pacific Streets. The tip provided that two of the men were wearing dark clothing and black jackets and that the third man was wearing a green jacket. [Matheny and Baker] responded to the call. At the scene, the officers observed the [petitioner] and another man, Silvio Paguero, standing on the corner. Both men were wearing clothing that fit the description. As the officers approached the street corner, they observed the [petitioner] hand a small item to Paguero. Believing that the two men might be involved in a drug transaction, the officers exited their vehicle.

"As Matheny approached the [petitioner], the [petitioner] turned and, as he began walking away, reached into his pants, pulled out a white item and placed it in

his mouth. Matheny identified himself as a police officer and ordered the [petitioner] to stop. After the [petitioner] ignored this request, Matheny placed his hand on the [petitioner's] jacket and again asked him to stop. In response, the [petitioner] pulled out of his jacket and attempted to run. Matheny wrestled the [petitioner] to the ground, positioned himself on the [petitioner's] back and instructed the [petitioner] to stop resisting and to spit the item out of his mouth. The [petitioner] failed to comply and pushed Matheny off of him. Both men rolled into the street and continued to wrestle as Matheny attempted to subdue the [petitioner].

"After Baker observed Matheny struggling with the [petitioner], he attempted to help restrain the [petitioner]. The [petitioner], however, pushed both officers off of him several times. After additional officers arrived, the [petitioner] was subdued successfully. The [petitioner] was arrested and a search incident to the arrest revealed $167 in small bills. No drugs were discovered. As a result of the struggle, Matheny sustained an interior chest wall injury that required medical treatment." Id., 376–77.

The petitioner filed a petition for a writ of habeas corpus challenging his conviction on the remaining count of assault of public safety personnel. He advanced two specific claims of ineffective assistance of his trial counsel, public defender Howard Ehring. First, he claimed that Ehring failed to investigate and to produce the testimony of Jessie Boiteux, who testified at the habeas trial that he witnessed the confrontation between the petitioner and the police, and that the petitioner did not assault the police officers or resist arrest.[2] Second, he claimed that Ehring was ineffective

---

[2] Ehring testified that he did not investigate Boiteux prior to trial because he did not want to open the door to any evidence of the petitioner's prior narcotics usage, which could have undermined his defense strategy with regard to the count of conspiracy to sell narcotics. The respondent argues that for a petition for a writ of habeas corpus based on trial counsel not

because he failed to obtain the medical records of Baker and Matheny to determine whether they suffered injuries in the altercation. The habeas court was not persuaded by the petitioner's claim with regard to the medical records but granted the petitioner's writ of habeas corpus after concluding that Ehring's failure to present Boiteux' testimony constituted ineffective assistance.

Boiteux testified before the habeas court, which found the following facts: "Boiteux' version of the events, which he provided at the habeas trial, was that two police officers jumped on top of the petitioner and then threw him against a fence. Supposedly, the officers were grabbing and trying to choke the petitioner. The petitioner was struggling but, according to Boiteux, only because he was trying to breathe. Essentially, Boiteux' version corroborated the petitioner's testimony at the criminal trial that an officer jumped on him, two officers choked him in an effort to have him spit out something in his mouth, and that he tussled with them because

investigating a witness to be successful, the petitioner must prove that the witness was both known to counsel and available to be investigated before trial. See *Floyd* v. *Commissioner of Correction*, 99 Conn. App. 526, 532, 914 A.2d 1049, cert. denied, 282 Conn. 905, 920 A.2d 308 (2007) ("[b]ecause the petitioner failed to prove that the witnesses were available to testify at trial, what they would have testified about or that their testimony would have had a favorable impact on the outcome of the trial, we agree with the court that his claim of ineffective assistance must fail"). The respondent, without directing us to any place in the record where Boiteux' availability was questioned or where this claim was raised before the habeas court, contends that the petitioner did not successfully prove Boiteux' availability before the habeas court, despite several instances at trial where both the petitioner and the state made reference to the fact that Boiteux was available to testify. The respondent's argument falls within the first prong of *Strickland* because it questions whether Ehring was reasonably competent in the performance of his duty, not whether the petitioner was prejudiced by his deficient performance. The respondent did not raise as an issue the habeas court's judgment with regard to the first prong of *Strickland*, that Ehring's performance was deficient. This argument, therefore, is not properly before this court.

he could not breathe." Further facts regarding Boiteux' testimony and the evidence produced at trial will be set forth as necessary.

"Our standard of review of a habeas court's judgment on ineffective assistance of counsel claims is well settled. In a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary." (Internal quotation marks omitted.) *Morris* v. *Commissioner of Correction*, 131 Conn. App. 839, 842, 29 A.3d 914, cert. denied, 303 Conn. 915, 33 A.3d 739 (2011).

"As enunciated in *Strickland* v. *Washington*, supra, [466 U.S.] 687, [our Supreme Court] has stated: It is axiomatic that the right to counsel is the right to the effective assistance of counsel. . . . A claim of ineffective assistance of counsel consists of two components: a performance prong and a prejudice prong." (Internal quotation marks omitted.) *Gaines* v. *Commissioner of Correction*, 306 Conn. 664, 678, 51 A.3d 948 (2012). "The claim will succeed only if both prongs are satisfied." (Internal quotation marks omitted.) *Bryant* v. *Commissioner of Correction*, 290 Conn. 502, 510, 964 A.2d 1186, cert. denied sub nom. *Murphy* v. *Bryant*, 558 U.S. 938, 130 S. Ct. 259, 175 L. Ed. 2d 242 (2009).

"To satisfy the performance prong . . . the petitioner must demonstrate that his attorney's representation was not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. . . . To satisfy the prejudice prong, a claimant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (Internal quotation marks

omitted.) *Gaines* v. *Commissioner of Correction,* supra, 306 Conn. 678. "A reasonable probability is a probability sufficient to undermine confidence in the outcome. . . . [T]he question is whether there is a reasonable probability that, absent the [alleged] errors, the [fact finder] would have had a reasonable doubt respecting guilt.

"In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. . . . Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." (Citations omitted; internal quotation marks omitted.) Id., 688–89. "Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the [petitioner] has met the burden of showing that the decision reached would reasonably likely have been different absent the errors." *Strickland* v. *Washington,* supra, 466 U.S. 696.

On appeal, the respondent contends that the habeas court improperly concluded that there was "at least a reasonable probability that the result would have been different with regard to [the charge of assault of Matheny] if Ehring had presented Boiteux' eyewitness corroboration of the petitioner's testimony." The respondent does not advance any argument with regard to the first prong of *Strickland,* arguing only that the habeas court erred in concluding that, under the second prong of *Strickland,* the deficient performance of the petitioner's trial counsel prejudiced his defense.

The respondent first claims that the habeas court failed to weigh properly the totality of the evidence

produced at trial. Under *Strickland*, a habeas court is required to "[take] the unaffected findings as a given, and [take] due account of the effect of the errors on the remaining findings . . . ." *Strickland* v. *Washington*, supra, 466 U.S. 696. The respondent argues that Boiteux' testimony left unaffected findings that, when taken as a given, provided a sufficiently reasonable basis for the jury to find the petitioner guilty of assaulting Matheny. Underscoring this argument is the respondent's contention that the habeas court did not take due account of the effect of the errors on the remaining findings.

The central premise of the respondent's claim is that Boiteux' testimony did not relate to the entire time frame during which the altercation took place. The respondent crafts an argument in which the altercation between the petitioner and the officers is trifurcated into three distinct periods of time or "phases." Boiteux' testimony, the respondent contends, does not pertain to one of these three phases, namely, when Matheny initially pursued the petitioner and attempted to detain him. The respondent, applying *Strickland*'s logic that unaffected findings must remain unaffected, concludes that the unaffected evidence pertaining to that phase is sufficient to convict the petitioner of assault of public safety personnel, and that the absence of Boiteux' testimony, therefore, did not prejudice the results of the petitioner's trial.

A review of the record reveals that the respondent did not advance, before either the habeas or the trial court, its argument that the altercation was divided into three distinct time frames.[3] The only evidence produced

---

[3] The petitioner states that we should decline to review this argument because it is not properly before this court. See *Oliphant* v. *Commissioner of Correction*, 80 Conn. App. 613, 618, 836 A.2d 471 (2003), cert. denied, 268 Conn. 907, 845 A.2d 412 (2004) ("This court is not bound to consider claimed errors unless it appears on the record that the question was distinctly raised . . . and was ruled upon and decided by the court adversely to the appellant's claim. . . . To review [claims that do not meet these criteria]

before the habeas court that Boiteux' testimony did not relate to the entire altercation was that he consistently referred to two officers as opposed to a single officer when describing the altercation. The respondent contends that "Boiteux' testimony was relevant only to the time *after* the first phase, when *multiple officers* attended to the petitioner. . . . If, before the habeas trial, it was reasonable for the jury to have found that Matheny was assaulted during the first phase of the exchange, nothing at the habeas trial changed that." (Emphasis in original.) The respondent, however, did not question Boiteux with regard to the extent of the struggle between Matheny and the petitioner before Baker joined the altercation. Boiteux' testimony reveals that he witnessed the entire altercation and that one officer "had" the petitioner and subsequently two officers struggled with the petitioner. It does not, however, trifurcate the altercation, make reference to any phase of the altercation or provide a detailed analysis of what occurred during the time frame the respondent refers to as the first phase. Determining that the altercation unfolded in phases, and that the jury concluded that the assault of Matheny took place during the first of those phases, would require speculation; the record does not support such a conclusion. The habeas court determined that Boiteux' account of the events corroborated the petitioner's testimony, and there is nothing in the record suggesting that the court's conclusion was

---

now would amount to an ambuscade of the [habeas] judge." [Citation omitted; internal quotation marks omitted.]). A review of the record in this case, however, reveals that the events that the respondent claims denote distinct time periods are present. Although it is true that the respondent urges us, for the first time on appeal, to view the altercation in three phases, the respondent asks us to review only events that appear in the record and does so within the context of the claim that Boiteux' testimony was insufficient to meet the threshold of *Strickland*'s prejudice prong. We therefore proceed to review the record to determine whether there is sufficient evidence to reverse the habeas court's conclusion that the absence of Boiteux' testimony prejudiced the petitioner within the meaning of *Strickland*.

clearly erroneous, or that the court improperly weighed the totality of the evidence in reaching the conclusion that the absence of Boiteux' testimony created at least a reasonable probability that the result of the trial would have been different had Boiteux testified.

The respondent next claims that the habeas court applied the incorrect legal standard when determining that the absence of Boiteux' testimony was sufficient to meet *Strickland*'s prejudice prong. Specifically, the respondent claims that the habeas court erroneously found that "[a] jury *could have* credited [Boiteux'] testimony and found reasonable doubt"; (emphasis added); and cited *Bryant* v. *Commissioner of Correction*, supra, 290 Conn. 523, as support for that proposition. The respondent properly asserts that the legal standard for holding that the petitioner was prejudiced by ineffective assistance of counsel is higher than the possibility that there *could have* been a different result. See *Cullen* v. *Pinholster*, 563 U.S. 170, 131 S. Ct. 1388, 1403, 179 L. Ed. 2d 557 (2011) ("The [petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding *would have* been different. . . . A reasonable probability is a probability sufficient to undermine confidence in the outcome. . . . That requires a substantial, not just conceivable, likelihood of a different result." [Citations omitted; emphasis added; internal quotation marks omitted.]); *Morales* v. *Commissioner of Correction*, 99 Conn. App. 506, 509, 914 A.2d 602, cert. denied, 282 Conn. 906, 920 A.2d 308 (2007) ("[t]he petitioner, as the plaintiff in a habeas corpus proceeding, bears a heavy burden of proof" [internal quotation marks omitted]).[4]

[4] The respondent directs this court to the habeas court's memorandum of decision, which states: "Although the petitioner called Baker and Matheny to testify at the habeas trial on the issue of the availability of their hospital reports, the respondent did not recall them to provide live testimony on the incident itself, making it harder to evaluate what truly happened." The respondent argues that this finding constitutes the habeas court improperly

The habeas court in this case did not, however, determine that the result *could have* been different, but rather that there was "at least a reasonable probability that the result *would have* been different with regard to [the assault of Matheny] if Ehring had presented Boiteux' eyewitness corroboration of the petitioner's testimony." (Emphasis added.) The habeas court used *could have* and referenced *Bryant* solely as support for the proposition that a jury is free to credit the testimony of any witness, and that the omission of a witness' testimony can, under certain circumstances, be sufficient for a finding of prejudice under the second prong of *Strickland.*[5] The habeas court determined that such

shifting the burden to the respondent to show the veracity of the evidence presented at trial. We disagree. In the context of the habeas court's decision, it is clear that the court simply was stating that Boiteux' testimony before the habeas court contradicted the testimony of the officers at trial, and that the officers were not asked before the habeas court to clarify or to explain the discrepancy presented by Boiteux' testimony. This is not burden shifting by the court, rather it is simply a factual finding that the inconsistencies of the testimony were not reconciled. The habeas court's finding was relevant because, had the testimonial discrepancy been reconciled, it likely would have affected the court's conclusion that the petitioner was prejudiced by the absence of Boiteux' testimony.

[5] The respondent contends that the habeas court did not make an affirmative credibility determination with regard to Boiteux, and, on this basis, distinguishes *Bryant* v. *Commissioner of Correction,* supra, 290 Conn. 502. In *Bryant,* the habeas court found that the testimony of four witness who were not called to testify by the petitioner's counsel "likely would have permeated to some degree every aspect of the trial and raised a reasonable doubt in the minds of the jury as to the petitioner's guilt" because the testimony would have served to impeach witnesses upon whose testimony the state built its case, as well as supporting a third party culpability defense. Id., 523. With regard to the four witnesses, the habeas court found them to be compelling, credible and highly persuasive. Id., 510–11. Although the credibility determination of the habeas court in *Bryant* was stronger than that of the habeas court in this case, the habeas court in this case did state that a jury "could have credited" Boiteux' testimony. The court found there was no showing that Boiteux' testimony would have been easily discredited or subject to damaging impeachment on cross-examination. Further, the habeas court noted the likely impartiality of Boiteux as a testifying witness due to the fact that he was not the petitioner's close friend or associate. "[T]he testimony of neutral, disinterested witnesses is exceedingly important." (Internal quotation marks omitted.) *Bryant* v. *Commissioner of Correction,* supra, 518. Most importantly, with regard to the habeas court's

circumstances existed in this case, in part, because Boiteux' testimony supported a credible defense Ehring raised at trial that the petitioner lacked the specific intent to prevent Matheny from performing his duty, and that any injuries suffered by the officers were a result of the petitioner's intent to regain his ability to breathe while being choked. The court also noted that the case was a "close one" because, even absent Boiteux' testimony, the jury did not find the petitioner guilty of assault of Baker.[6] In determining that Boiteux' testimony corroborated the petitioner's trial testimony, in a close case where the jury had to determine guilt on the basis of contradicting testimony about the altercation, the failure to call a neutral eyewitness who corroborated the petitioner's version of the events "had a pervasive effect on the inferences to be drawn from the

credibility determination, the court held that the absence of Boiteux' testimony at trial led to a "reasonable probability that the result would have been different" had he testified.

[6] The respondent argues that the habeas court improperly considered the fact that the jury was unable to reach a unanimous decision with regard to the charge of assault of Baker, relying on *Yeager* v. *United States*, 557 U.S. 110, 121–22, 129 S. Ct. 2360, 174 L. Ed. 2d 78 (2009) ("To ascribe meaning to a hung count would presume an ability to identify which factor was at play in the jury room. But that is not reasoned analysis; it is guesswork. Such conjecture about possible reasons for a jury's failure to reach a decision should play no part in assessing the legal consequences of a unanimous verdict that the jurors did return."). *Yeager*, however, pertains to assessing the legal consequences of a hung jury for the purposes of double jeopardy. See *United States* v. *Jackson*, 658 F.3d 145, 152–53 (2d Cir.), cert. denied, U.S.    , 132 S. Ct. 858, 181 L. Ed. 2d 564 (2011). Further, *Yeager* warns against guesswork in ascribing *reasons why* the jury failed to reach a verdict, but does not say that a habeas court cannot note, regardless of the jury's reasons, that the state was unable to secure a conviction with regard to a second criminal count arising out of the same events and circumstances. A habeas court can review the record to determine the strength of the state's case in determining whether trial counsel's deficiency was prejudicial. See, e.g., *Gaines* v. *Commissioner of Correction*, supra, 306 Conn. 688–92. Determining that the absence of Boiteux' eyewitness testimony increased the likelihood of a different result does not run afoul of *Yeager* because the court did not speculate as to the *reasons why* the jury was unable to reach a unanimous verdict, but rather properly considered the strength of the state's case at trial in determining whether ineffective counsel prejudiced the petitioner.

evidence, altering the entire evidentiary picture . . . ." *Strickland* v. *Washington,* supra, 466 U.S. 695–96.

The habeas court, therefore, properly considered and weighed the totality of the evidence and applied the correct legal standard in determining that the petitioner received ineffective assistance from his trial counsel. We agree with the habeas court's determination that there is a reasonable probability that, but for trial counsel's deficient performance, the result of the proceeding would have been different.

The judgment is affirmed.

In this opinion the other judges concurred.