******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

BILLY WRIGHT *v.* COMMISSIONER
OF CORRECTION
(AC 43607)

Moll, Alexander and Vertefeuille, Js.

*Syllabus*

The petitioner, who had previously been convicted of murder, sought a writ
of habeas corpus, claiming that he received ineffective assistance from
his criminal trial counsel, S. The petitioner's first trial resulted in a
mistrial following a hung jury, and, at the second trial, the jury found
the petitioner guilty. Following a trial, the habeas court granted the
petition for a writ of habeas corpus on the ground that, during the
petitioner's second trial, S failed to present testimony from G, the peti-
tioner's girlfriend at the time of the shooting, as an alibi witness. The
court emphasized that there was a hung jury at the petitioner's first trial
and that, although it was not possible to discern the individual jurors'
credibility assessments, the only evidence contradicting the state's evi-
dence at the first trial was G's testimony. The court reasoned that,
therefore, one half of the first jury was unable to conclude that the state
had met its burden of proof in light of G's testimony, and that G's
testimony impacted the outcome of the first trial. From the judgment
rendered thereon, the respondent, the Commissioner of Correction, on
the granting of certification, appealed to this court. *Held* that the habeas
court incorrectly determined that S rendered ineffective assistance by
failing to present an alibi defense: the court's determination was based
on the improper assumption that the six jurors from the first trial who
did not vote in favor of finding the petitioner guilty were influenced by
G, and that G's testimony contributed to the jury's inability to conclude
that the state had met its burden of proof beyond a reasonable doubt;
moreover, although the jury requested playback of G's testimony, G was
one of seven witnesses whose testimony was reviewed by the jury during
deliberations; accordingly, the court's finding that S rendered deficient
performance by failing to call G as an alibi witness was inextricably
intertwined with its determination as to the reason for the hung jury in
the petitioner's first trial, and because the reasons why there was a
hung jury are not ascertainable, it would be guesswork for the court to
attempt to determine such reasons.

Argued May 19—officially released December 7, 2021

*Procedural History*

Amended petition for a writ of habeas corpus,
brought to the Superior Court in the judicial district
of Tolland and tried to the court, *Kwak, J.*; judgment
granting the petition, from which the respondent, on
the granting of certification, appealed to this court.
*Reversed in part*; *new trial.*

*Jonathan M. Sousa*, deputy assistant state's attorney,
with whom, on the brief, were *Patrick J. Griffin*, state's
attorney, and *Adrienne Russo*, assistant state's attor-
ney, for the appellant (respondent).

*Adele V. Patterson*, senior assistant public defender,
for the appellee (petitioner).

*Opinion*

ALEXANDER, J. The respondent, the Commissioner of Correction, appeals from the judgment of the habeas court granting the petition for a writ of habeas corpus filed by the petitioner, Billy Wright. On appeal, the respondent claims that the court incorrectly determined that the petitioner's criminal trial counsel had rendered ineffective assistance by failing to present an alibi defense. We agree and, accordingly, reverse the judgment of the habeas court.

The petitioner was originally tried in 2010 for the April 27, 2008 murder of Ronald Bethea in violation of General Statutes § 53a-54a (a). *State* v. *Wright*, 152 Conn. App. 260, 261, 96 A.3d 638 (2014), rev'd, 322 Conn. 270, 140 A.3d 939 (2016).[1] The murder occurred outside of the Cardinal's Club in New Haven at approximately 1:47 a.m. Id., 262–63. The trial court declared a mistrial after a hung jury, and a retrial took place in 2011. Id., 261–62. At the second trial, the jury found the petitioner guilty of murder, and the court imposed a sentence of sixty years of imprisonment. Id., 262.

The petitioner initiated this habeas action, and, on March 1, 2018, he filed an amended petition that contained four counts. Only the first count, in which the petitioner alleged ineffective assistance of his criminal trial counsel, Richard Silverstein, for, inter alia, failing to present an alibi defense at his second criminal trial, is relevant to this appeal.[2] With respect to this claim, the petitioner alleged that a "fundamental difference between the first and second trials was that [Silverstein] did not pursue an alibi defense and did not produce evidence which established an alibi defense which had been produced at the first trial. An inference can be drawn that, but for trial counsel's failure to produce an alibi defense and evidence in support of an alibi defense, the result of the petitioner's second trial would have been different."

A trial on the petitioner's habeas petition was held on July 12 and August 30, 2018, and January 11 and February 28, 2019. The petitioner presented multiple witnesses. Stephanie Gonzalez, the petitioner's girlfriend at the time of the shooting and the mother of his child, testified in a manner consistent with her testimony at the petitioner's first criminal trial. She stated that, on the night the victim was shot, she got home between 11:30 p.m. and 12 a.m. after picking up their son from her grandmother's house. When she arrived home, the petitioner was asleep in their apartment. She further explained that she slept in the same bed as the petitioner and woke up a few times when her son woke up, "around 3, 4 then around, like, 6, 7 [o'clock] in the morning." Each time she woke up, the petitioner was still asleep in their bed. She further testified that she met with Silverstein about testifying at the petitioner's

second criminal trial. When she arrived at Silverstein's office on the morning she planned to testify, however, he told her she would not have to testify because "[h]e felt like he had a strong case and he didn't need me . . . ."

Attorney Jeffrey Kestenband testified as a criminal defense expert. In this capacity, he opined "that reasonably competent trial counsel would have called . . . Gonzalez to testify as an alibi witness at the second trial." He explained that Gonzalez' testimony provided direct evidence that the petitioner had an alibi for the time of the crime. Further, Kestenband testified that the lack of a jury verdict in the first trial, as well as the fact that the jury in the first trial asked to have Gonzalez' testimony read back during its deliberations, suggested that at least some jurors credited her testimony. He emphasized the importance of the hung jury, stating that "[i]t was six to six,[3] which would tend to suggest that the state had a hard time proving its case, and when you also consider the fact that [Gonzalez] not only provided evidence that, if credited, would have established that [the petitioner] was not guilty, but that she was the only witness called by the defense. That is really important information to consider when deciding how to defend [the petitioner] at the second trial." (Footnote added.) Kestenband also opined that there was a reasonable probability that a different outcome would have occurred in the petitioner's second trial if Silverstein had called Gonzalez and presented an alibi defense. On cross-examination, Kestenband admitted that it was possible that the jurors from the first trial did not credit Gonzalez' testimony, and, instead, found that the state had not proven its case beyond a reasonable doubt. However, he also stated that, "when I consider evidence as an expert and analyze it that way, I'm not really focusing on possibilities because almost anything is possible. I'm focused on reasonable probabilities, and while [I] acknowledge that it's possible, I find it unlikely that it's reasonably probable that that occurred."

Silverstein testified that his defense theory was to show that the police had conducted a flawed and incomplete investigation, and he stated that he "had to change it up" from the defense presented in the first trial because he was "not gonna try the same case that didn't result in a not guilty." Silverstein also attacked the state's identification evidence against the petitioner during the second criminal trial. He believed that the jury in the first trial had voted eleven to one or ten to two in favor of convicting, and stated that he had ordered the transcripts of the first trial only through closing arguments, because "anything after the closing argument I'm not interested in . . . ." After he was informed that the hung jury actually was divided six to six, Silverstein said that would not change how he handled the petitioner's defense. Silverstein explained

that he did not recall speaking to Gonzalez during the petitioner's trial but also testified that he reviewed her testimony from the first trial and "didn't find her credible and didn't think she'd do a good job, and I didn't think she did a good job during the first case . . . ." He believed that, if Gonzalez had been credible at the first trial, the jury would have returned a not guilty verdict. He further explained that he listed Gonzalez as a potential witness, served her with a subpoena, and informed the trial court that he intended to call her as a witness in order to keep the prosecutor "off balance as much as possible" even though he "had no intention of doing it . . . ."

On October 25, 2019, the habeas court issued a memorandum of decision granting the petition for a writ of habeas corpus on the ground that Silverstein rendered ineffective assistance of counsel when he failed to present an alibi defense.[4] It concluded that Silverstein rendered deficient performance when he did not call Gonzalez as an alibi witness and that this deficient performance prejudiced the petitioner. The court vacated the petitioner's conviction and remanded the case for a new criminal trial.

The court discussed the evidence presented at the petitioner's first and second trials, stating that there were "several notable differences," with one being that Gonzalez was not called as an alibi witness at the second trial. The court then addressed the testimony presented at the habeas trial. It discussed Gonzalez' testimony that the petitioner was asleep when she arrived home and remained there until morning, as well as the fact that Gonzalez was available to testify at the petitioner's second trial and had met with Silverstein the day he was scheduled to present the defense. The court found Gonzalez' testimony to be credible. The court noted Kestenband's testimony and found his "analyses to be persuasive." The court stated that Kestenband "concluded that reasonably competent trial counsel would have called Gonzalez as an alibi witness in the second trial. The impact that Gonzalez had on the first trial weighs in favor of calling her to discredit or negate Denard Lester's testimony in the second trial.[5] According to Kestenband, it was unreasonable for Silverstein to not call Gonzalez as an alibi witness because no one identified the petitioner as the shooter, but more than one witness placed the petitioner at the [Cardinal's] Club. Gonzalez' testimony would directly contradict the tenuous identification evidence that placed the petitioner at the club. . . . Thus, it was more important to call Gonzalez in the second trial when compared to the first trial." (Footnote added.)

In its decision, the court emphasized the hung jury in the petitioner's first trial and the jury's request for a playback of Gonzalez' testimony. The court stated that, "[a]lthough it is not possible to discern the individ-

ual jurors' credibility assessments, the only defense evidence that contradicted the circumstantial evidence . . . was the alibi supported by Gonzalez. Stated somewhat differently, all twelve jurors in the second trial found the tenuous circumstantial evidence sufficient to convict the petitioner, yet one half of the first jury was not able to conclude that the state had met its burden of proof *in light of the alibi provided by Gonzalez. Clearly, Gonzalez had an impact on the outcome of the first trial.*" (Emphasis added.) The court found that Silverstein made his assessments about Gonzalez' testimony "without the knowledge that the jury was evenly divided in the first trial. Silverstein's oblique assessment of her alibi testimony was premised on Silverstein's overly myopic view that a hung jury and [a] mistrial are not a defense victory." The court discussed the variety of ways the defense can call into question identification evidence and noted that Silverstein challenged both the identification evidence and the police investigation. The court found that "attacking the identification procedures themselves or the reliability of eyewitness identifications may create reasonable doubt, *but not in the manner an alibi witness can.*" (Emphasis added.)

The court stated that it "cannot determine any rational basis for Silverstein to not present Gonzalez' alibi testimony, even if the state attempted to show that she was biased because she was the petitioner's girlfriend and mother of their child." The court further stated that, "[a]lthough the jury in the first criminal trial theoretically may have been unable to reach a unanimous verdict solely because of disagreement as to the identification evidence, which would require completely negating or discounting Gonzalez' testimony, *the court does not find such a scenario plausible. The fact that the jury requested playback of Gonzalez' testimony underscores that her testimony influenced the deliberations and contributed to the jury being unable to conclude that the state had met its burden of proof beyond a reasonable doubt.*" (Emphasis added.)

The court concluded that Silverstein rendered ineffective assistance of counsel, stating: "Given all of the foregoing, the court concludes that [Silverstein] rendered deficient performance by not calling [Gonzalez] as an alibi witness . . . [and] that this deficient performance prejudiced the petitioner. The jury did not hear alibi evidence *that previously had a discernible impact by contributing to an evenly divided jury and mistrial.*" (Emphasis added.)

On October 31, 2019, the respondent filed a petition for certification to appeal, which the court granted. On appeal, the respondent argues that the habeas court incorrectly determined that the petitioner received ineffective assistance of counsel because Silverstein did not present Gonzalez as an alibi witness. Specifically,

the respondent contends that the court improperly based its ruling on its determination that one "half of the first jury was not able to conclude that the state had met its burden of proof in light of the alibi provided by Gonzalez . . . ." (Internal quotation marks omitted.) We agree with the respondent and, therefore, we reverse the judgment of the habeas court with respect to the claim of ineffective assistance for failure to present an alibi defense.

We first set forth the legal principles relevant to our resolution of this appeal. "Our standard of review of a habeas court's judgment on ineffective assistance of counsel claims is well settled. In a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary. . . .

"In *Strickland* v. *Washington*, [466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)], the United States Supreme Court established that for a petitioner to prevail on a claim of ineffective assistance of counsel, he must show that counsel's assistance was so defective as to require reversal of [the] conviction . . . . That requires the petitioner to show (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. . . . Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable. . . . Because both prongs . . . must be established for a habeas petitioner to prevail, a court may dismiss a petitioner's claim if he fails to meet either prong." (Internal quotation marks omitted.) *Anderson* v. *Commissioner of Correction*, 201 Conn. App. 1, 11–12, 242 A.3d 107, cert. denied, 335 Conn. 983, 242 A.3d 105 (2020).

In the present case, the court erred in concluding that Silverstein rendered deficient performance when he did not call the alibi witness because its determination was based on the improper assumption that six jurors from the first trial were "influenced [in] deliberations" by the alibi witness and that the alibi testimony "contributed to the jury being unable to conclude that the state had met its burden of proof beyond a reasonable doubt." In concluding that Silverstein's performance was deficient, the court repeatedly referenced its finding that the alibi witness' testimony was the cause of the hung jury at the petitioner's first trial. The court determined that one "half of the first jury was not able to conclude that the state had met its burden of proof in light of the alibi provided by Gonzalez. Clearly, Gonzalez had an impact on the outcome of the first trial."

"It is a settled doctrine in Connecticut that a valid jury verdict in a criminal case must be unanimous. . . .

A nonunanimous jury therefore cannot render any finding of fact. . . . The jury's inability to reach a unanimous verdict . . . does not shed any light on the jury's assessment of the merits of the evidence presented . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Covington*, 184 Conn. App. 332, 342, 194 A.3d 1224 (2018), aff'd, 335 Conn. 212, 229 A.3d 1036 (2020).

Furthermore, as this court noted in *Dieudonne* v. *Commissioner of Correction*, 141 Conn. App. 151, 162 n.6, 60 A.3d 385 (2013), appeal dismissed, 316 Conn. 474, 112 A.3d 157 (2015), "*Yeager* [v. *United States*, 557 U.S. 110, 129 S. Ct. 2360, 174 L. Ed 2d 78 (2009)] warns against guesswork in ascribing reasons why the jury failed to reach a verdict . . . ." (Emphasis omitted.) Although decided in a different context, *Yeager* is instructive on this issue.[6] In *Yeager*, the United States Supreme Court held that, "[b]ecause a jury speaks only through its verdict, its failure to reach a verdict cannot—by negative implication—yield a piece of information that helps puts together the trial puzzle. . . . Unlike the pleadings, the jury charge, or the evidence introduced by the parties, there is no way to decipher what a hung count represents. . . . A host of reasons— sharp disagreement, confusion about the issues, exhaustion after a long trial, to name but a few—could work alone or in tandem to cause a jury to hang. To ascribe meaning to a hung count would presume an ability to identify which factor was at play in the jury room. But that is not reasoned analysis; it is guesswork." (Citations omitted; footnote omitted.) *Yeager* v. *United States*, supra, 121–22; see also *United States* v. *Botti*, 722 F. Supp. 2d 207, 212 (D. Conn. 2010) ("[A] hung count means nothing in [posttrial] analyses. It cannot be made to mean anything."), aff'd, 711 F.3d 299 (2d Cir. 2013).

Although the habeas court correctly noted that "it is not possible to discern the individual jurors' credibility assessments," it then incorrectly determined that Gonzalez' testimony had a positive impact on the jury when it found that "[t]he jury did not hear alibi evidence *that previously had a discernible impact by contributing to an evenly divided jury and mistrial*." (Emphasis added.)

Additionally, both the petitioner and the habeas court emphasized the fact that the jury requested playback of Gonzalez' testimony during their deliberations. Gonzalez was one of seven witnesses whose testimony was reviewed by the jury during deliberations. The petitioner cites a number of cases for the proposition that "a request by a jury may be a significant indicator of [its] concern about evidence and issues important to [its] resolution of the case." (Internal quotation marks omitted.) None of these cases, however, is directly on point.[7]

After our thorough review of the record, we conclude that the habeas court's finding that Silverstein rendered deficient performance by failing to call Gonzalez as an alibi witness was inextricably intertwined with its determination as to the reason for the hung jury in the petitioner's first trial. The reasons why there was a hung jury are not ascertainable, and, therefore, it would be "guesswork" to attempt to determine such reasons. See *Yeager* v. *United States*, supra, 557 U.S. 122. Accordingly, the judgment of the habeas court must be reversed insofar as it was predicated on the court's improper assumption that one half of the members of the jury in the first trial voted for an acquittal due to the alibi testimony.

The judgment is reversed only with respect to the habeas court's determination that Silverstein provided ineffective assistance of counsel by failing to present an alibi defense and the case is remanded for a new trial as to that issue; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] The petitioner filed a direct appeal from the judgment of conviction. *State* v. *Wright*, supra, 152 Conn. App. 260In that appeal, this court reversed the judgment of conviction and remanded the case for a new trial. Id., 282. Our Supreme Court granted certification and reversed this court's decision and remanded the case with direction to affirm the judgment of conviction. *State* v. *Wright*, 322 Conn. 270, 272, 291, 140 A.3d 939 (2016).

[2] Silverstein did not represent the petitioner in his first criminal trial.

[3] Kestenband testified that he had reviewed the transcripts of the petitioner's first trial. Included in those transcripts was the following statement made by the court: "The court has received a note from the jury . . . . It reads as follows . . . we are unable to reach a unanimous decision, we are still six guilty, six not guilty." The court then declared a mistrial.

[4] The court rejected the petitioner's remaining claims of ineffective assistance of counsel, a violation of due process, and actual innocence. The petitioner has not challenged those aspects of the habeas court's decision.

[5] On the night the murder took place, video surveillance showed that, shortly before the shooting, Lester gave " 'dap,' " a brief hug and handshake, to a person who then shot the victim. *State* v. *Wright*, supra, 152 Conn. App. 278. At the petitioner's first trial, Lester testified that he knew the petitioner by the name " 'Wild Billy' " and identified the petitioner as the person to whom he gave " 'dap . . . .' " Id., 279. At the petitioner's second trial, however, Lester testified that on the night of the murder, the petitioner was not the individual to whom he gave " 'dap.' " Id.

[6] In *Yeager* v. *United States*, supra, 557 U.S. 110, the United States Supreme Court had to determine the legal consequences of a hung jury on some counts and an acquittal on other counts for the purposes of issue preclusion and double jeopardy. The court concluded that, for double jeopardy and issue preclusion purposes, "courts should scrutinize the jury's decisions, not its failures to decide," and held that "the consideration of hung counts has no place in the [issue preclusion] analysis." Id., 122.

[7] The cases that the petitioner cites for this proposition each involve appeals based on evidentiary rulings. In *State* v. *Devalda*, 306 Conn. 494, 496, 50 A.3d 882 (2012), on appeal, the defendant argued, inter alia, that the trial court improperly omitted limiting language in its jury instructions regarding the statutory definition of kidnapping. During deliberations, the jury in that case sent a note to the court asking it to "reread the definitions of the laws," at which point the court repeated the instruction, including the improper omission. (Internal quotation marks omitted.) Id., 510. Further, the jury requested playback of witness testimony relating to crucial time periods relating to the kidnapping charge. Id., 510–11. Our Supreme Court concluded that it was reasonably possible that the improper instruction had the effect of misleading the jury. Id., 511. In *State* v. *Miguel C.*, 305 Conn. 562, 564, 46 A.3d 126 (2012), the defendant appealed his convictions of

sexual assault in the first degree and risk of injury to a child, claiming that a portion of the complainant's testimony was improperly admitted and that, as a result, the verdict was substantially affected. In analyzing the risk of unfair prejudice to the defendant, our Supreme Court stated that it "need not speculate about the prejudicial effect . . . because the jury's note to the court during deliberations provides insight into the facts that the jury considered when it was reaching its verdict. . . . [B]y asking to rehear the portion of the testimony [that was stricken] . . . the jury evidenced its belief that the stricken testimony was significant." Id., 577–78.

In *State* v. *Carter*, 232 Conn. 537, 538, 656 A.2d 657 (1995), the defendant appealed from the trial court's failure to give a self-defense instruction to the jury. In determining whether the trial court erred when it declined to give the instruction, our Supreme Court discussed the evidence presented at trial, as well as the jury's concern regarding the issue of self-defense, as evidenced by a note sent by the jury to the court during deliberations in which it asked if the court had addressed the issue of self-defense in its charge. Id., 549. The court stated that it has "recognized that a request by a jury may be a significant indicator of [its] concern about evidence and issues important to [its] resolution of the case." Id. The court concluded that there was sufficient evidence to raise the issue of self-defense, and that the instruction should have been given to the jury. Id., 549–50. Last, in *State* v. *Moody*, 214 Conn. 616, 617, 627, 573 A.2d 716 (1990), the defendant appealed his murder conviction, arguing, inter alia, that the trial court erred in denying his motion in limine and in permitting the state to present irrelevant and prejudicial evidence. After it determined that certain evidence had been admitted in error, our Supreme Court analyzed whether the error was harmful. Id., 629. During deliberations, the jury sent the court a question about the evidence that had been admitted in error, and our Supreme Court determined that the question showed that the jury found the piece of evidence important, that it had been misled by the evidence, and, therefore, that the error was harmful. Id., 629–30.

———————————————