******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# ROBERTO A. *v.* COMMISSIONER OF CORRECTION*
## (AC 46884)

Clark, Westbrook and DiPentima, Js.

*Syllabus*

The respondent, the Commissioner of Correction, appealed, on the granting of certification, from the habeas court's grant of the petitioner's petition for a writ of habeas corpus. The respondent claimed, inter alia, that the court improperly concluded that the petitioner's right to the effective assistance of counsel was violated by the failure of his counsel, M, to investigate adequately and to present an alibi witness, G, at the petitioner's criminal trial. *Held*:

The issue raised in the habeas petition of whether M rendered ineffective assistance by failing to secure G's testimony at the criminal trial included within it the issue of whether M's investigation into G as a potential witness was reasonable.

The habeas court did not err in finding M's performance deficient, as it determined that, pursuant to the factors set forth in *Skakel* v. *Commissioner of Correction* (329 Conn. 1), M's failure to investigate and present the testimony of G was not reasonable and that G was a credible witness.

The habeas court correctly concluded that M's deficient performance prejudiced the petitioner, as the state's case was not particularly strong, the theory of the defense rested on the petitioner's alibi, and G would have offered noncumulative alibi testimony that the court determined was credible.

Argued September 11—officially released November 12, 2024

*Procedural History*

Amended petition for writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland and tried to the court, *Bhatt, J.*; judgment granting the petition, from which the respondent, on the granting of certification, appealed to this court. *Affirmed.*

*Timothy F. Costello*, supervisory assistant state's attorney, with whom, on the brief, were *David R.*

---

* In accordance with our policy of protecting the privacy interests of the victims of sexual abuse and the crime of risk of injury to a child, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

*Applegate*, state's attorney, and *Elizabeth Moseley*, senior assistant state's attorney, for the appellant (respondent).

*Robert L. O'Brien*, assigned counsel, with whom, on the brief, was *Christopher Y. Duby*, assigned counsel, for the appellee (petitioner).

*Opinion*

DiPENTIMA, J. In this appeal we again consider the parameters of the presumption of competence in determining whether trial counsel performed deficiently in representing a petitioner at his criminal trial. The respondent, the Commissioner of Correction, appeals from the judgment of the habeas court granting the petition for a writ of habeas corpus filed by the petitioner, Roberto A. The respondent claims that the court improperly (1) decided an issue not raised in the habeas petition and (2) concluded that the petitioner's right to the effective assistance of counsel was violated by the failure of his trial counsel to investigate adequately and to call a noncumulative and credible alibi witness. We affirm the judgment of the habeas court.

The following facts, as set forth by the habeas court, and procedural history are relevant. During the petitioner's 2013 criminal trial, the victim, A, testified that "[a]t the time of . . . the incident she was twelve years old and in sixth grade. She would return home from school around 3 p.m., let the dog out and make herself something to eat. She would stay there until her parents got home in the evening around 6 p.m.

"One day in the spring of 2009, she was at home per her usual routine when [the petitioner] came to the door. She opened the door and gave him a hug and kiss since he was family. She wondered to herself why he was there since he had never been there before. She thought 'it was just kind of weird that he would just

show up randomly.' She testified that [the petitioner] did not live in the area, did not know where he lived and guessed New Jersey. She recalled that he was driving an 'SUV-type' car like an 'Explorer or something,' but was not really sure. She testified that it was a larger car. She then took him on a tour of the house, during which he sexually assaulted her. . . .

"The state and the defense attempted to pin down a precise time period for when the incident occurred and the 'safest bet' was that it was sometime in May, a few weeks after she returned from her week long family vacation, which started on April 12, 2009, but not close to the end of the school year in mid-June."

The petitioner presented an alibi defense that he was not in the state at the time of the alleged criminal offenses. B, the petitioner's daughter, testified at the criminal trial that from March to June, 2009, the petitioner lived in Georgia with her, her children, and her husband, G. B testified that, during that time, she was a full-time student and homemaker and that G was a soldier stationed in Georgia. She further testified that she would have known if the petitioner had borrowed one of the family's cars and that he did not borrow a car in May, 2009, for an overnight trip. On cross-examination, she stated that it was possible that the petitioner had been gone overnight to visit relatives. As the habeas court found, B "was also cross-examined about her motivation for testifying on behalf of her father," and, "[d]uring closing argument, the state repeatedly called into question [B's] testimony and hammered home her bias and prejudice . . . ."

C, the petitioner's employer in Georgia, testified that the petitioner's duties included driving a truck within a fifty mile radius and that the petitioner started working for him on March 27, 2009. C accounted for the petitioner's whereabouts on the days that the petitioner

worked, which days did not include May 3 to May 7, May 9 to May 18, or May 20 to May 22, 2009. On May 30, 2009, the petitioner's employment was terminated.

Following a jury trial, the petitioner was convicted of one count of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2) and two counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (1) and (2). The court, *Pavia, J.*, sentenced the petitioner to a total effective sentence of thirty years of incarceration, suspended after seventeen years, followed by twenty-five years of probation.

After his conviction was affirmed on direct appeal, the petitioner filed a petition for a writ of habeas corpus. The operative petition alleges, inter alia, that his trial counsel, Miles Gerety, rendered ineffective assistance by failing to present G as an additional alibi witness because G could have testified that the petitioner was not physically present in Connecticut when the crimes were alleged to have occurred. At the habeas trial, G testified that, in 2009, he was a staff sergeant with the military and was stationed in Georgia where he lived in a house with B, their children and the petitioner. He testified that, although he worked long days, he saw the petitioner every day because the petitioner "was a very active part of the household." He further testified that he did not recall the petitioner leaving the Georgia home overnight during the spring and summer of 2009, that the petitioner did not borrow the family's car for an entire twenty-four hour period during that time frame, and that it was "[i]mpossible" for the petitioner to have traveled to Danbury during that time without his knowing it.

Following trial, the habeas court, *Bhatt, J.*, granted the petition and concluded that Gerety rendered ineffective assistance by failing to investigate and call G as an alibi witness at the petitioner's criminal trial. This

appeal followed. Additional facts will be set forth as necessary.

## I

The respondent claims that the court "erred in modifying the claim [pleaded] in the petitioner's habeas petition and deciding a claim not set forth therein. Specifically, it erred in faulting Gerety for inadequately investigating [G's] utility as an alibi witness. The petition did not present a claim regarding Gerety's investigation." We are not persuaded.

"The petition is in the nature of a pleading . . . . [T]he interpretation of pleadings is always a question of law for the court . . . . Our review of the [habeas] court's interpretation of the pleadings therefore is plenary. . . . [T]he modern trend, which is followed in Connecticut, is to construe pleadings broadly and realistically, rather than narrowly and technically. . . . [T]he [petition] must be read in its entirety in such a way as to give effect to the pleading with reference to the general theory upon which it proceeded, and do substantial justice between the parties. . . . As long as the pleadings provide sufficient notice of the facts claimed and the issues to be tried and do not surprise or prejudice the opposing party, we will not conclude that the [petition] is insufficient to allow recovery." (Citation omitted; internal quotation marks omitted.) *Anderson* v. *Commissioner of Correction*, 114 Conn. App. 778, 786, 971 A.2d 766, cert. denied, 293 Conn. 915, 979 A.2d 488 (2009).

In the operative petition, the petitioner alleged that Gerety rendered ineffective assistance by failing to present a meaningful alibi defense in that he (1) "[f]ailed to establish that the petitioner was not physically present in Connecticut when the alleged assault occurred, as he was living and working in Georgia," and (2) "[f]ailed to secure the testimony of [G], the petitioner's

alibi witness." The respondent argues that the use of the term "secure" in the petition does not include a claim as to the adequacy of Gerety's investigation, yet the court determined that Gerety failed to investigate G as a potential alibi witness at the petitioner's criminal trial.

Reading the relevant claim in the petition broadly and realistically so as to give effect to the general theory upon which the claim is based, securing G's testimony would necessarily entail an investigation into his potential testimony. Gerety's investigation of a potential defense witness is part of his overall determination of whether to call that witness to testify for the defense at trial. In *Johnson* v. *Commissioner of Correction*, 330 Conn. 520, 198 A.3d 52 (2019), the habeas court granted a petition on the basis that trial counsel failed to prepare and present an alibi defense; id., 523; and our Supreme Court reversed the decision of the Appellate Court, which held that the petitioner's claim of trial counsel's "inadequate investigation of the alibi witnesses was not properly preserved because he framed his claim as a failure to present alibi witnesses, not as a failure to investigate." (Internal quotation marks omitted.) Id., 540. Our Supreme Court stated that, "[a]lthough, in his amended petition for a writ of habeas corpus, the petitioner phrased his claim as a failure to 'present' the testimony of [certain alibi witnesses], it is sufficiently clear from the record that, throughout the habeas proceedings, the petitioner proceeded on a general theory that if defense counsel had adequately investigated his alibi defense, they would have learned that their concerns about its weaknesses were unfounded and, thus, would have presented the alibi witnesses' testimony at trial." Id., 540–41. The court further reasoned: "We see no meaningful distinction between the phrases 'failure to prepare and present' and 'failure to investigate and present' that renders the investigation portion of this

claim unpreserved. 'Preparation' necessarily includes 'investigation.' " Id., 541. Similarly, in the present case, the issue of Gerety's investigation was litigated at the habeas trial without objection from the respondent. We see no meaningful distinction between the phrases "failed to secure" the testimony of G and "failed to investigate and secure" the testimony of G. See id.; see also *Gaines* v. *Commissioner of Correction*, 306 Conn. 664, 680, 51 A.3d 948 (2012) (strategic choices made after thorough investigation are virtually unchallengeable; strategic choices made after less than complete investigation are reasonable to extent that reasonable professional judgments support limitations on investigation).

Accordingly, we conclude that the issue raised in the petition of whether Gerety rendered ineffective assistance by failing to secure G's testimony at the criminal trial included within it the issue of whether Gerety's investigation into G as a potential witness was reasonable.

## II

The respondent claims that the court improperly concluded that (1) Gerety rendered constitutionally deficient performance by failing to investigate and call G as an alibi witness and (2) such deficient performance prejudiced the petitioner. We disagree.

We begin with the applicable standard of review and law governing ineffective assistance of counsel claims. "In *Strickland* v. *Washington*, [466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)], the United States Supreme Court established that for a petitioner to prevail on a claim of ineffective assistance of counsel, he must show that counsel's assistance was so defective as to require reversal of [the] conviction. . . . That

requires the petitioner to show (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. . . . To satisfy the performance prong of the *Strickland* test, the petitioner must demonstrate that his attorney's representation was not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. . . . With respect to the prejudice component of the *Strickland* test, the petitioner must demonstrate that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. . . . [T]he [petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (Internal quotation marks omitted.) *Soto* v. *Commissioner of Correction*, 215 Conn. App. 113, 119–20, 281 A.3d 1189 (2022).

"[T]he habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony. . . . The application of the habeas court's factual findings to the pertinent legal standard, however, presents a mixed question of law and fact, which is subject to plenary review." (Citation omitted; internal quotation marks omitted.) *Gaines* v. *Commissioner of Correction*, supra, 306 Conn. 677.

A

The respondent first argues that the court erred in concluding that the petitioner proved deficient performance. We are not persuaded.

The court found that there was no reasonable strategic reason not to call G as a witness at the criminal trial. The court found that G was available at the time of the criminal trial, Gerety "had ample time to contact" G, and G's testimony could have been presented

remotely to the jury if G was unable to travel to Connecticut. The court stated that it was "incumbent" upon Gerety, who knew of G's existence as an alibi witness, to contact G "to determine whether [G] was a witness who needed to be called on [the petitioner's] behalf." The court stated that "[G] was another alibi witness to confirm, corroborate and supplement [B's] testimony about [the petitioner's] alibi. His testimony would serve to corroborate the defense that [the petitioner] would have been unable to make the approximately thirty-five to forty hour trip to Connecticut and back without anyone in the household knowing that he was gone. [G] testified that [the petitioner] helped the family with watching the children and making dinner for the family. He further testified that [the petitioner] did not have independent access to a car and would have to borrow their keys. Furthermore, he testified that this held true for the entire spring of 2009. His testimony is not merely duplicative of [B's] but complements and corroborates it."

The court additionally determined that G's testimony would have been "crucial" to the defense and that there is "no basis from which to conclude that [G's] testimony and credibility would have been impeached." The court further stated that B "was significantly impeached by the state by virtue of her being [the petitioner's] daughter. For example, the state's rebuttal arguments to the jury questioned [B's] motivation for supporting [the petitioner's] alibi, even referring to her as his 'right-hand woman.' While it was easy for the state to argue that a defendant's own daughter would either wilfully lie to protect her father or be wilfully ignorant of his misdeeds, it would be much harder for them to levy that charge against [G], specifically that he would be willing to lie to protect his former father-in-law. At the time of the criminal trial, he and [B] were divorced or divorcing, thus making it harder for the state to claim

bias as [it] did with [B]. There is nothing about [G] himself that would make him a less than desirable witness. [G] was a member of the military and served the country here and overseas. There is no evidence of any criminal record or arrests or any acts of untruthfulness. [G], with his background and unimpeached credibility, would have made a strong defense witness. His testimony would have allowed the defense to work around the obvious claims of bias and prejudice that were levied against [B]."

The respondent argues that the petitioner did not rebut the presumption that Gerety acted reasonably and that the court erred in failing to entertain the range of possible reasonable reasons that Gerety may have had for not further investigating G or presenting his testimony.

A court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance"; (internal quotation marks omitted) *Gaines* v. *Commissioner of Correction*, supra, 306 Conn. 679; but that presumption is not without limits. See id., 680–82. Although "strategic choices made after [a] thorough investigation of [the] law and facts relevant to plausible options are virtually unchallengeable"; (internal quotation marks omitted) id., 680; the facts found by the habeas court make clear that Gerety's failure to investigate G as a potential witness does not fall within this category.

We note that Gerety testified at the habeas trial that he had no memory of G or the specifics of his strategy in presenting the alibi defense.[1] Notwithstanding Gerety's

[1] The respondent also argues that Gerety's inability to remember G's name at the habeas trial does not establish that he did not investigate G as a potential witness. The court however did not rely on Gerety's failure to remember G's name. The court explained that, despite that Gerety did not recall G at the time of the habeas trial, there was evidence that he knew who G was at the time of the criminal trial. Gerety elicited testimony from B at the criminal trial regarding G's whereabouts and G testified at the habeas trial that he was not contacted by anyone representing the petitioner.

lack of memory, the court, citing evidence produced at the habeas trial, found that G was available and that, given the theory of the defense, it was incumbent on Gerety to reach G to determine whether he needed to call G as a witness. Gerety, however, did not make any attempt to do so. Gerety's decision not to call G as a witness, which was made after a less than complete investigation, is, therefore, only "reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." (Internal quotation marks omitted.) Id.; see also *Skakel* v. *Commissioner of Correction*, 329 Conn. 1, 35, 188 A.3d 1 (2018) ("when counsel's failure to proceed with an investigation is due not to professional or strategic judgment but, instead, results from oversight, inattention or lack of thoroughness and preparation, no deference or presumption of reasonableness is warranted"), cert. denied sub nom. *Connecticut* v. *Skakel*,     U.S.    , 139 S. Ct. 788, 202 L. Ed. 2d 569 (2019).

"[A] decision by counsel to forgo an investigation into the possible testimony of a potentially significant witness is constitutionally impermissible unless counsel has a sound justification for doing so; speculation, guesswork or uninformed assumptions about the availability or import of that testimony will not suffice. Instead, counsel must seek to interview the witness to determine the value of any testimony that he may be able to provide. . . . With specific regard to the duty to investigate a defendant's alibi defense, counsel is obligated to make all reasonable efforts to identify and interview potential alibi witnesses. . . . [Our Supreme Court has] identified several nonexclusive factors to be considered in determining whether counsel's failure to investigate and present the testimony of an additional

alibi witness or witnesses was reasonable under the circumstances. They include (1) the importance of the alibi to the defense . . . (2) the significance of the witness' testimony to the alibi . . . (3) the ease with which the witness could have been discovered . . . and (4) the gravity of the criminal charges and the magnitude of the sentence that the petitioner faced." (Citations omitted.) *Skakel* v. *Commissioner of Correction*, supra, 329 Conn. 34–37.

In concluding that Gerety's failure to investigate and present the testimony of G was not reasonable, the court examined the factors in *Skakel* and determined that (1) the theory of the defense was that the petitioner had an alibi, (2) G's testimony would have been "crucial" to the defense, (3) Gerety knew of the existence of G, was aware of his whereabouts, and would have been able to contact him through B and (4) the charges against the petitioner were "extremely serious and exposed him to decades in prison."

The respondent contends, however, that Gerety's performance in not securing G's testimony was reasonable because G was not credible, was not a disinterested witness, and would have been vulnerable to impeachment to the same extent as B had been due to his status as the petitioner's former son-in-law, the father of the petitioner's grandchildren, and someone who continued to care for the petitioner. The court considered the possible impeachment evidence against G and noted that G was not entirely disinterested, as he had been married to the petitioner's daughter, B. The court also noted that G was no longer part of the family structure, that at the time of the criminal trial G and B were either in the process of divorcing or were divorced, that G was not close with the petitioner, and, additionally, that G was a member of the military, lacked any criminal history, and lacked any acts of untruthfulness. The court determined that G was a credible witness, that he would

have made a strong defense witness, and that there was nothing about G that would make him a less than desirable witness. The court's determination regarding deficient performance hinges in large part on its determination of G's credibility, which determination we cannot second-guess. See *Soto* v. *Commissioner of Correction*, supra, 215 Conn. App. 129 ("[a]ppellate courts do not second-guess the trier of fact with respect to [determinations of] credibility . . . and [t]his court does not retry the case or evaluate the credibility of the witnesses" (citation omitted; internal quotation marks omitted)). For the foregoing reasons, we conclude that the court did not err in finding that Gerety's performance was deficient.

B

The respondent further argues that the court erred in concluding that the alleged failure of Gerety to investigate and present G's testimony prejudiced the petitioner. We disagree.

First, the respondent contends that the court applied an incorrect prejudice standard because it quoted from the dissent from the denial of certiorari in *Chinn* v. *Shoop*, U.S. , 143 S. Ct. 28, 214 L. Ed. 2d 229 (2022), regarding the reasonable probability standard in *Strickland* without also quoting from *Harrington* v. *Richter*, 562 U.S. 86, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011). The court quoted the dissent in *Chinn* for the proposition that "the reasonable probability standard is not the same as the more likely than not or preponderance of the evidence standard; it is a qualitatively lesser standard." (Internal quotation marks omitted.) *Chinn* v. *Shoop*, supra, 143 S. Ct. 28 (Jackson, J., dissenting from denial of certiorari). The respondent contends that the court's failure to note that *Harrington* v. *Richter*, supra, 562 U.S. 112, described the difference between

the prejudice standard in *Strickland* and a more probable than not standard as being "slight" demonstrates its application of an improper standard for prejudice. The respondent argues that "[t]he habeas court's emphasis on the qualitative difference between the standards, rather than the high degree of similarity highlighted in *Harrington*, evidences that it applied an improper, diluted prejudice standard."

The court did not apply an incorrect prejudice standard. The court correctly noted that the standard for assessing prejudice under *Strickland* and the preponderance of the evidence standard are not the same. *Harrington* stated that "*Strickland* asks whether it is reasonably likely the result would have been different. . . . This does not require a showing that counsel's actions more likely than not altered the outcome . . . ." (Citation omitted; internal quotation marks omitted.) *Harrington* v. *Richter*, supra, 562 U.S. 111–12. As part of its recitation of the prejudice standard under *Strickland*, the habeas court quoted relevant Connecticut law stating that "a defendant need not show that counsel's deficient conduct more likely than not altered the outcome of the case . . . because [t]he result of a [criminal] proceeding can be rendered unreliable, and [thus] the proceeding itself unfair, even if errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome." (Citation omitted; internal quotation marks omitted.) *Skakel* v. *Commissioner of Correction*, supra, 329 Conn. 38. In its reasoning, the habeas court applied the proper standard, and it concluded that there was a reasonable probability that G's testimony, if it were to have been presented to the jury, would have resulted in a different outcome. There is nothing in the court's decision to suggest that it used an incorrect standard. In the absence of any evidence that the court engaged in an improper legal analysis, we presume that the court

knew the law and applied it correctly. See *State* v. *Reynolds*, 264 Conn. 1, 29 n.21, 836 A.2d 224 (2003), cert. denied, 541 U.S. 908, 124 S. Ct. 1614, 158 L. Ed. 2d 254 (2004).

The respondent additionally contends that "it is not almost 'more probable than not' that [G's] testimony would have altered the outcome of the [criminal] trial."[2] According to the respondent, in light of the fact that the petitioner was convicted at trial, the jury "evidently did not afford . . . much weight" to the testimony of B or C concerning the petitioner's whereabouts during the spring of 2009, and G's testimony would not have altered that outcome because (1) G's testimony was weak in that he was not perpetually present in the home to monitor the petitioner, (2) the strength of the state's case undermines the court's determination of prejudice and (3) G was impeachable.[3]

To the contrary, the state's case was not particularly strong. There was no DNA evidence or corroborating eyewitness testimony connecting the petitioner to the crimes. As the habeas court found, "the main testimony against [the petitioner] was that of A. Like most cases involving allegations of sexual assault, the jury's verdict depended on [its] assessment of her credibility. Unlike

---

[2] We again note, however, that the standard for prejudice is not equivalent to a preponderance of the evidence standard, and we disagree that the habeas court's conclusion as to prejudice was improper.

[3] The respondent also suggests that the court erred by faulting Gerety for not requesting a continuance to secure G's testimony, stating that, "[a]s a question of prejudice, the petitioner presented no evidence that, had Gerety requested a continuance during trial, the court would have granted one and Gerety would have obtained [G's] testimony within the time provided." The court did not base its determination of prejudice on Gerety's failure to request a continuance. Rather, the court, when discussing deficient performance, found that G was an available witness. In so doing, the court noted supporting factors, including that G's testimony could have been secured remotely and presented to the jury if G was unable to travel to Connecticut and that Gerety could have requested a brief continuance to secure G's testimony.

most cases, the defense did put on an alibi defense." The lack of the strength of the state's case is further illustrated by the length of the jury's deliberations. The jury deliberated for four days, asked for a playback of the testimony of A and her father, both of whom testified for the state, and sent a note stating, "[w]e are stuck," and asking for advice. The court provided a Chip Smith instruction.[4] See *Skakel* v. *Commissioner of Correction*, supra, 329 Conn. 86 (lack of strength of state's case was illustrated by jury's four days of deliberations and request to have read back only testimony that supported state's theory).

The court reasoned that the defense presented an "incomplete alibi" through C, who provided alibi information for only a limited number of days when the petitioner was working, which did not cover the entire spring of 2009, within which time frame A testified that the sexual assault had occurred. The court further noted that B's testimony was challenged by the state for being incomplete, in that she ultimately testified that it was possible that the petitioner was gone for twenty-four hours during the relevant time frame, and for being biased because she is the petitioner's daughter.

The court determined that G's testimony was not cumulative and "would have provided further corroboration of the alibi from an individual who could not be impeached in the manner [B] was." G's testimony at the habeas trial differed from the testimony of B and C at the criminal trial in that G could account for the petitioner's whereabouts for the entire spring of 2009, unlike C, who could account for the petitioner's whereabouts only on certain days, and B, who admitted on cross-examination that the petitioner could have left

---

[4] "A Chip Smith instruction reminds the jurors that they must act unanimously, while also encouraging a deadlocked jury to reach unanimity." (Internal quotation marks omitted.) *State* v. *O'Neil*, 261 Conn. 49, 51 n.2, 801 A.2d 730 (2002).

her home for a twenty-four hour period. G testified that he saw the petitioner every day, that the petitioner did not leave the home overnight during the spring and summer of 2009, that the petitioner would have had to ask either G or B for the keys to the family car before borrowing it, and that it was impossible for the petitioner to travel to Danbury without G knowing it. The court determined that G's testimony was "credible and compelling . . . ." As detailed in part II A of this opinion, we will not second-guess the court's credibility determinations. See *Soto* v. *Commissioner of Correction*, supra, 215 Conn. App. 129.

In sum, the state's case was not especially strong, and the theory of the defense rested on the petitioner's alibi. G would have offered noncumulative alibi testimony, which the court determined was credible, placing the petitioner in Georgia within each twenty-four hour period during the spring of 2009, when A testified the crimes took place. See *Skakel* v. *Commissioner of Correction*, supra, 329 Conn. 70 ("research has not revealed a single case . . . in which the failure to present the testimony of a credible, noncumulative, independent alibi witness was determined not to have prejudiced a petitioner under *Strickland*'s second prong"). As such, we conclude that the court correctly concluded that the deficient performance of the petitioner's trial counsel in failing to investigate and present the testimony of G resulted in prejudice to the petitioner.

The judgment is affirmed.

In this opinion the other judges concurred.