******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# BILLY WRIGHT *v.* COMMISSIONER
# OF CORRECTION
# (AC 46631)

Moll, Suarez and Westbrook, Js.

*Syllabus*

The petitioner, who had previously been convicted of murder, appealed, on the granting of certification, from the habeas court's judgment denying his petition for a writ of habeas corpus. The petitioner claimed, inter alia, that the court improperly concluded that his second criminal trial counsel, S, did not provide ineffective assistance of counsel when he made a decision not to present the testimony of G, the petitioner's former girlfriend and mother of his child, who had offered alibi testimony at the petitioner's first criminal trial. *Held*:

The habeas court correctly concluded, in light of all of the evidence, that S made a reasoned, strategic choice, after a thorough investigation, not to present both an alibi defense and a misidentification defense, as S investigated G as an alibi witness, considered her relationship to the petitioner, and determined that she would not make a good witness, and, instead, focused his defense on challenging the police investigation and the state's identification evidence.

The habeas court did not err in its determination that S's conduct in failing to present an alibi defense at the petitioner's second criminal trial did not constitute deficient performance.

The habeas court did not abuse its discretion in sustaining the objection of the respondent's counsel to a hypothetical question posed to an expert witness for the petitioner related to S's allegedly deficient performance, as the question could not reasonably be separated from the essence of the ultimate issue that was before the court, namely, whether the standard of care required S to present the alibi defense.

Argued March 26, 2025—officially released February 10, 2026

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland and tried to the court, *Newson, J.*; judgment denying the petition, from which the petitioner, on the granting of certification, appealed to this court. *Affirmed*.

*Vishal K. Garg*, for the appellant (petitioner).

*Christopher A. Alexy*, senior assistant state's attorney, with whom, on the brief, was *John P. Doyle*, state's attorney, for the appellee (respondent).

*Opinion*

SUAREZ, J. The petitioner, Billy Wright, appeals, following the granting of his petition for certification to appeal, from the judgment of the habeas court denying his amended petition for a writ of habeas corpus. On appeal, the petitioner claims that the court improperly (1) concluded that his second criminal trial counsel made a reasonable strategic decision not to present an alibi defense and (2) excluded expert testimony at the habeas trial related to his second criminal trial counsel's allegedly deficient performance. We affirm the judgment of the habeas court.

The following facts as set forth previously by this court in the petitioner's first habeas appeal and procedural history are relevant to this appeal. "The petitioner was originally tried in 2010 for the April 27, 2008 murder of Ronald Bethea in violation of General Statutes § 53a-54a (a). . . . The murder occurred outside of the Cardinal's Club in New Haven at approximately 1:47 a.m. . . . The trial court declared a mistrial after a hung jury, and a retrial took place in 2011. . . . At the second trial, the jury found the petitioner guilty of murder, and the court imposed a sentence of sixty years of imprisonment.[1] . . .

"The petitioner initiated [his first] habeas action, and, on March 1, 2018, he filed an amended petition [(operative petition)] that contained four counts. Only the first

---

[1] On direct appeal, this court reversed the judgment of conviction, concluding that the trial court improperly restricted the degree of cross-examination of certain police officers regarding the adequacy of the investigation. *State* v. *Wright*, 152 Conn. App. 260, 261, 96 A.3d 638 (2014), rev'd, 322 Conn. 270, 140 A.3d 939 (2016). Our Supreme Court reversed the judgment of this court and remanded the case to this court with direction to render judgment affirming the judgment of the trial court. *State* v. *Wright*, 322 Conn. 270, 291, 140 A.3d 939 (2016).

count, in which the petitioner alleged ineffective assistance of his criminal trial counsel, Richard Silverstein, for, inter alia, failing to present an alibi defense at his second criminal trial, is relevant to this appeal. With respect to this claim, the petitioner alleged that a 'fundamental difference between the first and second trials was that [Silverstein] did not pursue an alibi defense and did not produce evidence which established an alibi defense which had been produced at the first trial. An inference can be drawn that, but for trial counsel's failure to produce an alibi defense and evidence in support of an alibi defense, the result of the petitioner's second trial would have been different.'

"A trial on the petitioner's habeas petition was held on July 12 and August 30, 2018, and January 11 and February 28, 2019. The petitioner presented multiple witnesses. Stephanie Gonzalez, the petitioner's girlfriend at the time of the shooting and the mother of his child, testified in a manner consistent with her testimony at the petitioner's first criminal trial. She stated that, on the night the victim was shot, she got home between 11:30 p.m. and 12 a.m. after picking up their son from her grandmother's house. When she arrived home, the petitioner was asleep in their apartment. She further explained that she slept in the same bed as the petitioner and woke up a few times when her son woke up, 'around 3, 4 then around, like, 6, 7 [o'clock] in the morning.' Each time she woke up, the petitioner was still asleep in their bed. She further testified that she met with Silverstein about testifying at the petitioner's second criminal trial. When she arrived at Silverstein's office on the morning she planned to testify, however, he told her she would not have to testify because '[h]e felt like he had a strong case and he didn't need me . . . .'

"Attorney Jeffrey Kestenband testified as a criminal defense expert. In this capacity, he opined 'that reasonably competent trial counsel would have called . . . Gonzalez to testify as an alibi witness at the second trial.' He explained that Gonzalez' testimony provided direct

evidence that the petitioner had an alibi for the time of the crime. Further, Kestenband testified that the lack of a jury verdict in the first trial, as well as the fact that the jury in the first trial asked to have Gonzalez' testimony read back during its deliberations, suggested that at least some jurors credited her testimony. He emphasized the importance of the hung jury, stating that '[i]t was six to six, which would tend to suggest that the state had a hard time proving its case, and when you also consider the fact that [Gonzalez] not only provided evidence that, if credited, would have established that [the petitioner] was not guilty, but that she was the only witness called by the defense. That is really important information to consider when deciding how to defend [the petitioner] at the second trial.' . . . Kestenband also opined that there was a reasonable probability that a different outcome would have occurred in the petitioner's second trial if Silverstein had called Gonzalez and presented an alibi defense. On cross-examination, Kestenband admitted that it was possible that the jurors from the first trial did not credit Gonzalez' testimony, and, instead, found that the state had not proven its case beyond a reasonable doubt. However, he also stated that, 'when I consider evidence as an expert and analyze it that way, I'm not really focusing on possibilities because almost anything is possible. I'm focused on reasonable probabilities, and while [I] acknowledge that it's possible, I find it unlikely that it's reasonably probable that that occurred.'

"Silverstein testified that his defense theory was to show that the police had conducted a flawed and incomplete investigation, and he stated that he 'had to change it up' from the defense presented in the first trial because he was 'not gonna try the same case that didn't result in a not guilty.' Silverstein also attacked the state's identification evidence against the petitioner during the second criminal trial. He believed that the jury in the first trial had voted eleven to one or ten to two in favor of convicting, and stated that he had ordered the transcripts of the first trial only through closing arguments, because 'anything after the closing argument I'm not interested

in . . . .' After he was informed that the hung jury actually was divided six to six, Silverstein said that would not change how he handled the petitioner's defense. Silverstein explained that he did not recall speaking to Gonzalez during the petitioner's trial but also testified that he reviewed her testimony from the first trial and 'didn't find her credible and didn't think she'd do a good job, and I didn't think she did a good job during the first case . . . .' He believed that, if Gonzalez had been credible at the first trial, the jury would have returned a not guilty verdict. He further explained that he listed Gonzalez as a potential witness, served her with a subpoena, and informed the trial court that he intended to call her as a witness in order to keep the prosecutor 'off balance as much as possible' even though he 'had no intention of doing it . . . .'

"On October 25, 2019, the habeas court issued a memorandum of decision granting the petition for a writ of habeas corpus on the ground that Silverstein rendered ineffective assistance of counsel when he failed to present an alibi defense. It concluded that Silverstein rendered deficient performance when he did not call Gonzalez as an alibi witness and that this deficient performance prejudiced the petitioner. The court vacated the petitioner's conviction and remanded the case for a new criminal trial.

"The court discussed the evidence presented at the petitioner's first and second trials, stating that there were 'several notable differences,' with one being that Gonzalez was not called as an alibi witness at the second trial. The court then addressed the testimony presented at the habeas trial. It discussed Gonzalez' testimony that the petitioner was asleep when she arrived home and remained there until morning, as well as the fact that Gonzalez was available to testify at the petitioner's second trial and had met with Silverstein the day he was scheduled to present the defense. The court found Gonzalez' testimony to be credible. The court noted Kestenband's testimony and found his 'analyses to be persuasive.' The court stated that Kestenband 'concluded that reasonably competent trial counsel would have called Gonzalez as an alibi witness in the second

trial. The impact that Gonzalez had on the first trial weighs in favor of calling her to discredit or negate . . . testimony in the second trial. According to Kestenband, it was unreasonable for Silverstein to not call Gonzalez as an alibi witness because no one identified the petitioner as the shooter, but more than one witness placed the petitioner at the [Cardinal's] Club. Gonzalez' testimony would directly contradict the tenuous identification evidence that placed the petitioner at the club. . . . Thus, it was more important to call Gonzalez in the second trial when compared to the first trial.' . . .

"In its decision, the court emphasized the hung jury in the petitioner's first trial and the jury's request for a playback of Gonzalez' testimony. The court stated that, '[a]lthough it is not possible to discern the individual jurors' credibility assessments, the only defense evidence that contradicted the circumstantial evidence . . . was the alibi supported by Gonzalez. Stated somewhat differently, all twelve jurors in the second trial found the tenuous circumstantial evidence sufficient to convict the petitioner, yet one half of the first jury was not able to conclude that the state had met its burden of proof *in light of the alibi provided by Gonzalez. Clearly, Gonzalez had an impact on the outcome of the first trial.*' . . . The court found that Silverstein made his assessments about Gonzalez' testimony 'without the knowledge that the jury was evenly divided in the first trial. Silverstein's oblique assessment of her alibi testimony was premised on Silverstein's overly myopic view that a hung jury and [a] mistrial are not a defense victory.' The court discussed the variety of ways the defense can call into question identification evidence and noted that Silverstein challenged both the identification evidence and the police investigation. The court found that 'attacking the identification procedures themselves or the reliability of eyewitness identifications may create reasonable doubt, *but not in the manner an alibi witness can.*' . . .

"The court stated that it 'cannot determine any rational basis for Silverstein to not present Gonzalez' alibi testimony, even if the state attempted to show that she

was biased because she was the petitioner's girlfriend and mother of their child.' The court further stated that, '[a]lthough the jury in the first criminal trial theoretically may have been unable to reach a unanimous verdict solely because of disagreement as to the identification evidence, which would require completely negating or discounting Gonzalez' testimony, *the court does not find such a scenario plausible*. The fact that the jury requested playback of Gonzalez' testimony underscores that *her testimony influenced the deliberations and contributed to the jury being unable to conclude that the state had met its burden of proof beyond a reasonable doubt.*' . . .

"The court concluded that Silverstein rendered ineffective assistance of counsel, stating: 'Given all of the foregoing, the court concludes that [Silverstein] rendered deficient performance by not calling [Gonzalez] as an alibi witness . . . [and] that this deficient performance prejudiced the petitioner. The jury did not hear alibi evidence *that previously had a discernible impact by contributing to an evenly divided jury and mistrial*.' . . .

"On appeal, the respondent [the Commissioner of Correction] argue[d] that the habeas court incorrectly determined that the petitioner received ineffective assistance of counsel because Silverstein did not present Gonzalez as an alibi witness. Specifically, the respondent contend[ed] that the court improperly based its ruling on its determination that one 'half of the first jury was not able to conclude that the state had met its burden of proof in light of the alibi provided by Gonzalez . . . .'" (Citations omitted; emphasis in original; footnote added; footnotes omitted.) *Wright* v. *Commissioner of Correction*, 209 Conn. App. 50, 52–58, 267 A.3d 249 (2021), cert. denied, 341 Conn. 903, 268 A.3d 656 (2022).

This court concluded that "the [habeas] court erred in concluding that Silverstein rendered deficient performance when he did not call the alibi witness because its determination was based on the improper assumption that six jurors from the first trial were 'influenced [in] deliberations' by the alibi witness and that the alibi

testimony 'contributed to the jury being unable to conclude that the state had met its burden of proof beyond a reasonable doubt.' In concluding that Silverstein's performance was deficient, the [habeas] court repeatedly referenced its finding that the alibi witness' testimony was the cause of the hung jury at the petitioner's first trial. The [habeas] court determined that one 'half of the first jury was not able to conclude that the state had met its burden of proof in light of the alibi provided by Gonzalez. Clearly, Gonzalez had an impact on the outcome of the first trial.' " Id., 59.

In determining that the habeas court incorrectly concluded that Silverstein rendered deficient performance, this court noted that " '[i]t is a settled doctrine in Connecticut that a valid jury verdict in a criminal case must be unanimous. . . . A nonunanimous jury therefore cannot render any finding of fact. . . . The jury's inability to reach a unanimous verdict . . . does not shed any light on the jury's assessment of the merits of the evidence presented . . . .' " Id.

"Furthermore, as this court noted in *Dieudonne* v. *Commissioner of Correction*, 141 Conn. App. 151, 162 n.6, 60 A.3d 385 (2013), appeal dismissed, 316 Conn. 474, 112 A.3d 157 (2015), '*Yeager* [v. *United States*, 557 U.S. 110, 121–22, 129 S. Ct. 2360, 174 L. Ed. 2d 78 (2009)] warns against guesswork in ascribing reasons why the jury failed to reach a verdict . . . .' " *Wright* v. *Commissioner of Correction*, supra, 209 Conn. App. 60. "Although decided in a different context, *Yeager* is instructive on this issue. In *Yeager*, the United States Supreme Court held that, '[b]ecause a jury speaks only through its verdict, its failure to reach a verdict cannot—by negative implication—yield a piece of information that helps puts together the trial puzzle. . . . Unlike the pleadings, the jury charge, or the evidence introduced by the parties, there is no way to decipher what a hung count represents. . . . A host of reasons—sharp disagreement, confusion about the issues, exhaustion after a long trial, to name but a few—could work alone or in tandem to

cause a jury to hang. To ascribe meaning to a hung count would presume an ability to identify which factor was at play in the jury room. But that is not reasoned analysis; it is guesswork.' . . .

"Although the habeas court correctly noted that 'it is not possible to discern the individual jurors' credibility assessments,' it then incorrectly determined that Gonzalez' testimony had a positive impact on the jury when it found that '[t]he jury did not hear alibi evidence *that previously had a discernible impact by contributing to an evenly divided jury and mistrial*.' . . .

"After our thorough review of the record, we conclude that the habeas court's finding that Silverstein rendered deficient performance by failing to call Gonzalez as an alibi witness was inextricably intertwined with its determination as to the reason for the hung jury in the petitioner's first trial. The reasons why there was a hung jury are not ascertainable, and, therefore, it would be 'guesswork' to attempt to determine such reasons. . . . Accordingly, the judgment of the habeas court must be reversed insofar as it was predicated on the court's improper assumption that one half of the members of the jury in the first trial voted for an acquittal due to the alibi testimony." (Citations omitted; emphasis in original; footnotes omitted.) Id., 60–62. This court reversed the judgment of the habeas court only with respect to the habeas court's determination that Silverstein provided ineffective assistance of counsel by failing to present an alibi defense and remanded the case for a new habeas trial on that issue. Id., 62.

The habeas court, *Newson, J.*, held a new trial on February 21, 2023. The habeas court heard testimony from Gonzalez, Kestenband, Silverstein, and the petitioner. In addition, the parties resubmitted all of the exhibits that had been admitted during the first habeas trial and submitted transcripts of that proceeding.

At the second habeas trial, Kestenband testified that, at the first habeas trial, it was his opinion "[t]hat it

constituted deficient performance to not call . . . Gonzalez as an alibi witness at [the petitioner's] second trial." Kestenband further testified that "counsel before a second trial, especially if it's new counsel . . . would have a duty to review the first trial transcript. And obviously part of that was . . . Gonzalez' testimony at the first trial. Based on a review of that testimony, I think virtually by itself, given the fact that she was the only witness for the defense and she was the only witness who provided direct evidence on the question of guilt or innocence in this case, that counsel had a duty to review that testimony and consider strongly whether to call her as a witness at the second trial." He further testified that, when he reviewed the record of the first criminal trial, he noted that Gonzalez was "the only defense witness, who . . . provided direct evidence on the question of guilt or innocence and whose testimony came in relatively unimpeached in a manner that I found to be credible, then when you consider the fact on top of that that the jury verdict at the first trial was split six to six and that the jury had asked for a readback of . . . Gonzalez' testimony immediately before declaring itself deadlocked, that bolstered, in my view, the idea that she should have been called as a witness at the second trial."

During his testimony, Kestenband admitted that the question of presenting an alibi witness can be difficult and that every case is different. According to Kestenband, a jury could draw an adverse inference "if the alibi witness is not credible that the defendant may have played a role in securing a false alibi, which would tend to demonstrate a consciousness of guilt, which, obviously, would make it easier for the jury to convict the defendant."

Consistent with his testimony at the first habeas trial, Silverstein testified that he had reviewed the first criminal trial transcript and that his defense strategy was to attack the adequacy of the police investigation. Silverstein further testified that he did not think Gonzalez' testimony would have been helpful. According to him, many attorneys "throw everything up there to see if [it]

sticks," but he prefers to "keep a case very small" and stated that he wanted the jury in the petitioner's second trial to focus on the state's identification evidence. He explained that he did not present the alibi defense because he does not like to present alibi defenses "unless [the alibi witnesses are] third parties that have absolutely no connection, no relationship." He further testified that, when "you put an alibi defense on there, it's almost like you're switching the burden of proof . . . if [the jury does not] believe [the alibi witness], I've made your case." According to Silverstein, "when you call one witness, it's an alibi witness, it's uncorroborated, [and the petitioner has] a relationship with that witness, it seems . . . to be kind of [a] desperate move."

On May 23, 2023, the court issued a memorandum of decision in which it denied the operative petition for a writ of habeas corpus. In rejecting the petitioner's claim of ineffective assistance of counsel, the court noted "that the ineffective assistance of counsel inquiry is not whether subsequent counsel, after having scoured the record with the benefit of hindsight, can point to general tactical or strategic mistakes made by trial counsel and come up with different or 'better' ways to defend the case. . . . The question is, under the facts and circumstances then existing, whether the course of representation chosen by trial counsel fell so far outside of 'the [objective standard of reasonable] competence demanded of attorneys in criminal cases' that it deprived the defendant of a fair trial . . . . So, the question the court has been tasked to answer here is whether . . . Silverstein's failure to rely on . . . Gonzalez to provide an alibi defense for the petitioner constituted ineffective assistance of counsel." (Citations omitted; emphasis omitted.)

The court noted that, for the second criminal trial, Silverstein's "objective was to challenge the identification of the petitioner, primarily through challenging the thoroughness of the police investigation." The court found that "Silverstein met with . . . Gonzalez, including the morning of the last day of evidence, and considered

the possibility of an alibi defense . . . . When asked why he did not pursue the alibi, he gave the reason that he does not like [to] use [an] alibi as a defense unless it is unimpeachable because, notwithstanding that the jury will be instructed that a defendant bear no affirmative burden to establish that [he] was elsewhere . . . Silverstein believes it places a spotlight on a defendant to 'prove' that he was definitely somewhere else, or the jury will default that 'he must have been there.' He also reasoned that the single individual—girlfriend, mother, family member—alibi is too easy to impeach based on legitimate question[s] about how far a person may be willing to go to help a loved one." (Footnote omitted.)

The court found that, "[i]n light of all of the evidence in the present case . . . Silverstein's decision to focus on attacking the police investigation and identification [evidence] and to not use the alibi defense was not unreasonable." In doing so, the court recognized that, "[w]hile the state's case as to the identity of the actual shooter was entirely circumstantial, in that nobody testified to actually seeing the petitioner shoot the victim, there were multiple witnesses, if their testimony was accepted, from which the jury could have concluded that the petitioner was present at the [Cardinal's] Club that evening and [was] the actual shooter." The court further noted that "the alibi defense would have relied *solely* on the credibility of the petitioner's girlfriend." (Emphasis in original.) On the basis of its review of the transcripts of the petitioner's first criminal trial, which were admitted as full exhibits at the second habeas trial, the court found that "[Gonzalez] did not provide a statement to anyone about the circumstances of the evening in question until about nine months later. She was not able to offer any independent corroboration [that] the two were together, and she was impeached during the first trial not only for knowingly violating the sequestration order by talking with the petitioner about the case prior to testifying, but for admitting that she and the petitioner had specifically discussed what other witnesses had testified to. Also, although she claimed the two were no longer in a

relationship at the time of the first trial, she admitted she had regularly written, called and visited with the petitioner for the two years he was incarcerated before trial, including an in-person visit only a few days before she testified." (Footnote omitted.) The court specifically found that "[o]ne of the express reasons . . . Silverstein gave for not liking the girlfriend or family members alibi defense that was not a 'sure thing' was the particular complication that people in those types of relationships are easily impeachable because of the 'wouldn't you do anything' to save a loved one idea." The court concluded that, "[u]nder these circumstances, [it could not] find that it was unreasonable for . . . Silverstein to have made the conscious decision not to complicate his defense with a 'soft' alibi witness."

Regarding the petitioner's argument that Silverstein's performance was deficient for not presenting an alibi defense in addition to attacking the identification evidence, the court acknowledged that these two defenses were not necessarily inconsistent with one another. The court, however, found that "Silverstein gave a considered reason for going only with an attack on the investigation and identification of the petitioner." It concluded that, "[b]ased on the totality of the circumstances in this case, it was not unreasonable for . . . Silverstein to [have] decided that he was not going to contemporaneously pursue an alibi defense."

The court further found that "[t]his same reasoning would also defeat the petitioner's argument that . . . Silverstein *could have* shifted his defense theory to include the alibi once he realized that the trial judge was not allowing him as much leeway to attack the police investigation and identification as [Silverstein] anticipated." (Emphasis in original.) The court noted that, "[w]hile . . . Silverstein *could have*, at least in theory, made the decision to call . . . Gonzalez once he realized the trial court was going to limit the breadth of his attack on the

identification of the petitioner, his line of attack was already clearly before the jury." **(Emphasis in original.)**

Ultimately, the court concluded that Silverstein "had a choice between two defenses, neither substantially more compelling than the other, and gave reasoned answers as to why he chose one over the other under the circumstances he was presented with, which is entitled to great deference." Accordingly, the court concluded that the petitioner failed to meet his burden of proving deficient performance.

The petitioner filed a timely petition for certification to appeal, which the court granted. This appeal followed. Additional facts and procedural history will be set forth as necessary.

I

On appeal, the petitioner claims that the habeas court improperly concluded that Silverstein made a reasonable strategic decision not to present an alibi defense. Specifically, the petitioner argues that he "alleged that counsel was ineffective for failing to present the alibi because counsel should have presented the alibi in addition to, or instead of, the inadequate investigation defense." He further argues that "the habeas court treated the two defenses as inconsistent and considered only whether counsel's decisions were reasonable in light of the purported inconsistency." Lastly, he maintains that "reasonably competent counsel would have reconsidered the decision to present the alibi at around the time the state rested its case . . . ." We are not persuaded.

We begin by setting forth our standard of review and the following legal principles. "A criminal defendant's right to the effective assistance of counsel extends through the first appeal of right and is guaranteed by the sixth and fourteenth amendments to the United States constitution and by article first, §8, of the Connecticut constitution. . . . To succeed on a claim of ineffective assistance of counsel, a habeas petitioner must satisfy the two-pronged test articulated in *Strickland* v.

*Washington*, [466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)]. *Strickland* requires that a petitioner satisfy both a performance prong and a prejudice prong. To satisfy the performance prong, a claimant must demonstrate that counsel made errors so serious that counsel was not functioning as the counsel guaranteed . . . by the [s]ixth [a]mendment. . . . To satisfy the prejudice prong, a claimant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . Because both prongs . . . must be established for a habeas petitioner to prevail, a court may dismiss a petitioner's claim if he fails to meet either prong. . . .

"On appeal, [a]lthough the underlying historical facts found by the habeas court may not be disturbed unless they [are] clearly erroneous, whether those facts constituted a violation of the petitioner's rights [to the effective assistance of counsel] under the sixth amendment is a mixed determination of law and fact that requires the application of legal principles to the historical facts of [the] case. . . . As such, that question requires plenary review by this court unfettered by the clearly erroneous standard. . . .

"Because our resolution of the present case turns on our review of the performance prong, some additional explication of that prong is necessary. In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. Prevailing norms of practice as reflected in American Bar Association standards and the like . . . are guides to determining what is reasonable. . . . Nevertheless, [j]udicial scrutiny of counsel's performance *must be highly deferential*. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be

made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court *must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance*; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action *might* be considered sound trial strategy. . . .

"Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. . . . At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. . . .

"Inasmuch as [c]onstitutionally adequate assistance of counsel includes competent pretrial investigation . . . . [e]ffective assistance of counsel imposes an obligation [on] the attorney to investigate all surrounding circumstances of the case and to explore all avenues that may potentially lead to facts relevant to the defense of the case. . . .

"Nevertheless, strategic choices made after thorough investigation of law and facts relevant to plausible options *are virtually unchallengeable*; [but] strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness

in all the circumstances, applying a heavy measure of deference to counsel's judgments. . . .

"[T]here are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way. . . . The United States Supreme Court has cautioned that a reviewing court, in considering whether an attorney's performance fell below a constitutionally acceptable level of competence pursuant to the standards set forth herein, must properly apply the strong presumption of competence that *Strickland* mandates and is *required* not simply to give [trial counsel] the benefit of the doubt . . . but *to affirmatively entertain the range of possible reasons* [*that*] *counsel may have had for proceeding as* [*he*] *did.* . . . This strong presumption of professional competence extends to counsel's investigative efforts . . . as well as to choices made by counsel regarding what defense strategy to pursue. . . .

"It is [also] well established that the burden of establishing grounds for relief in a habeas corpus proceeding rest[s] with the petitioner. . . . The petitioner, as the plaintiff in a habeas corpus proceeding, bears a heavy burden of proof. . . . [I]t is well established that a petitioner in a habeas proceeding cannot rely on mere conjecture or speculation . . . but must instead offer demonstrable evidence in support of his claim. . . .

"It is equally well established that the [habeas] court, as the trier of fact, [is] the sole arbiter of facts and credibility and [is] free to believe in whole or in part the [witness'] testimony. . . . The court also [is] free to draw reasonable inferences from that testimony when rendering judgment." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Owen* v. *Commissioner of Correction*, 234 Conn. App. 481, 494–99, 344 A.3d 158, cert. denied, 353 Conn. 923, 345 A.3d 812 (2025).

A

The petitioner first argues that "[c]ounsel's decision to present the alibi is inseparable from counsel's

investigation into the merits of that defense." He maintains that Silverstein had a duty to conduct an adequate investigation into a criminal case. The petitioner further contends that, as a result of Silverstein's failure to order the transcripts of any of the proceedings after closing arguments, "he mistakenly believed that the jury had split [eleven to one] in favor of a conviction. He also was unaware of the jury note requesting a readback of Gonzalez' testimony immediately before the jury deadlock. . . . His decision to . . . not present Gonzalez was premised on his belief that the hung jury in the first case was unfavorable, which was based in turn on counsel's erroneous belief about the nature of the split. Rather, because counsel believed that the jurors were mostly in favor of conviction, he determined that he needed to make significant changes to the defense." This argument ignores this court's holding in *Wright* v. *Commissioner of Correction*, supra, 209 Conn. App. 50.

In *Wright*, this court addressed the issue of Silverstein's alleged deficient performance. This court concluded that the first habeas court "erred in concluding that Silverstein rendered deficient performance when he did not call the alibi witness because its determination was based on the improper assumption that six jurors from the first trial were 'influenced [in] deliberations' by the alibi witness and that the alibi testimony 'contributed to the jury being unable to conclude that the state had met its burden of proof beyond a reasonable doubt.'" Id., 59. As stated previously in this opinion, this court held that, "[a]lthough the habeas court correctly noted that 'it is not possible to discern the individual jurors' credibility assessments,' it then incorrectly determined that Gonzalez' testimony had a positive impact on the jury when it found that '[t]he jury did not hear alibi evidence that previously had a discernible impact by contributing to an evenly divided jury and mistrial.'" (Emphasis omitted.) Id., 61. This court concluded that the habeas court's finding "that Silverstein rendered deficient performance by failing to call Gonzalez as an alibi witness was inextricably intertwined with its determination as

to the reason for the hung jury in the petitioner's first trial. The reasons why there was a hung jury are not ascertainable, and, therefore, it would be 'guesswork' to attempt to determine such reasons. . . . Accordingly, the judgment of the habeas court must be reversed insofar as it was predicated on the court's improper assumption that one half of the members of the jury in the first trial voted for an acquittal due to the alibi testimony." (Citation omitted.) Id., 62. This court remanded the case for a new trial as to whether Silverstein rendered ineffective assistance of counsel by failing to present an alibi defense. Id.

A second habeas trial was conducted on February 21, 2023. At that trial, Silverstein testified that he reviewed the transcripts from the first criminal trial and that his strategy for the second criminal trial was to challenge the state's identification evidence by challenging the adequacy of the police investigation. According to Silverstein, he did not think Gonzalez' testimony was helpful. Silverstein stated that, "when you call one witness, it's uncorroborated, [and the petitioner has] a relationship with the witness, it seems . . . to be kind of [a] desperate move." Silverstein nevertheless spoke with Gonzalez and issued a subpoena for her to testify at the second criminal trial. See, e.g., *Roberto A.* v. *Commissioner of Correction*, 229 Conn. App. 104, 115, 325 A.3d 1192 (duty to investigate alibi defense requires counsel to "make all reasonable efforts to identify and interview potential alibi witnesses" (internal quotation marks omitted)), cert. denied, 350 Conn. 935, 327 A.3d 384 (2024). For those reasons, Silverstein did not call Gonzalez as a witness. We conclude that the habeas court correctly concluded that, in light of all the evidence, Silverstein made a reasoned, strategic choice, after a thorough investigation, not to present Gonzalez as an alibi witness.

B

The petitioner next argues that the "habeas court improperly concluded that counsel made a reasonable strategic decision not to present both the alibi and the

misidentification defense." The petitioner contends that, because the two defenses are complementary rather than contradictory, no reasonable attorney would have decided not to present the alibi defense. We disagree.

In its memorandum of decision, the habeas court noted that, "[w]hile the petitioner is correct that the defenses are not inherently contradictory, and could arguably be considered complementary . . . this, again, is not the question for the habeas court to answer. The question is whether the alibi added so much that it was unreasonable for . . . Silverstein to have left it out." The court found that Silverstein's explanation that he likes to keep a case "very small" was a "considered reason" for attacking only the investigation and identification evidence presented by the state. The court noted that, "[f]or seasoned trial lawyers . . . this is a message often repeated: Juries like consistency. They don't like to feel like a lawyer is trying to trick them. Pick an issue and 'hammer it home' as your 'story' to the jury. See also *State* v. *Shabazz*, 246 Conn. 746, 764, 719 A.2d 440 (1998) ('[a]lthough it is true that a defendant is legally permitted to raise inconsistent defenses, when he does so a jury, applying its common sense, is entitled to view with skepticism the persuasiveness of all of the defenses'), citing *State* v. *Person*, 236 Conn. 342, 359, 673 A.2d 463 (1996) (*Borden*, *J.*, concurring) (defendant's presentation of inconsistent defenses may be 'self-penalizing . . . because it will . . . encourage jury skepticism about his entire defense' . . .). Based on the totality of the circumstances in this case, it was not unreasonable for . . . Silverstein to decide that he was not going to contemporaneously pursue an alibi defense."

On appeal, the petitioner argues that, although the court recognized that the alibi defense and the misidentification defense were not inconsistent with each other, the court treated them as such by relying on *Shabazz* and *Person*. According to the petitioner, *Shabazz* and *Person* are cases in which the defendants proffered inconsistent defenses. The petitioner argues that the present case is

"strikingly similar" to *Foster* v. *Wolfenbarger*, 687 F.3d 702 (6th Cir. 2012), cert. denied, 568 U.S. 1228, 133 S. Ct. 1580, 185 L. Ed. 2d 576 (2013), in which "the . . . [United States] Court of Appeals [for the Sixth Circuit] found that an attorney who presented a misidentification defense, but failed to present an alibi, was ineffective."

The petitioner's reliance on *Foster* is misplaced. In *Foster*, the petitioner was charged with first degree murder. *Foster* v. *Wolfenbarger*, supra, 687 F.3d 705. His primary defense at trial was mistaken identification; however, prior to trial, a potential witness sent a letter to trial counsel claiming that the petitioner was at his home from 2:15 to 6 a.m. on the day of the murder. Id. Trial counsel spoke with the potential witness over the telephone for roughly fifteen to twenty minutes. Id. The witness was not called at trial, and the petitioner was convicted of second degree murder. Id. The petitioner brought a petition seeking a writ of habeas corpus in the United States District Court for the Eastern District of Michigan raising a number of claims, including ineffective assistance of trial counsel for the failure to mount an alibi defense. Id., 705–706. At a hearing, trial counsel testified that he found the potential alibi witness' testimony to be "vague" and was concerned that he was going to be a poor witness. Id., 707. "The district court concluded that counsel's ineffectiveness turned not on whether trial counsel's conclusion regarding the [potential witness] was reasonable strategic judgment, but rather on whether it was reasonable not to further investigate possible support for an alibi defense in light of the [potential witness'] testimony." Id.

The United States Court of Appeals for the Sixth Circuit affirmed the District Court's judgment, noting that "trial counsel's only investigation with regard to the alibi defense was to question [the potential witness], over the telephone, for approximately fifteen to twenty minutes. Even crediting trial counsel's conclusion that [the potential witness] would make a poor witness, that does not represent a full investigation of the alibi defense

under the circumstances." Id., 708. The court in *Foster* further concluded that the "alibi defense was completely consistent with, and in fact [complementary] to, trial counsel's theory of mistaken identification." Id. It went on to state that "this is not a situation where defense counsel is required to choose between different avenues and pick the theory of the case that counsel believed was stronger. Instead, trial counsel chose not to investigate an avenue that potentially could have bolstered the defense that counsel was already pursuing." Id.

By contrast, in the present case, as stated previously in this opinion, Silverstein did investigate Gonzalez as an alibi witness. Silverstein reviewed the transcripts of the first criminal trial and determined that Gonzalez was not helpful. He spoke with her and issued a subpoena for her testimony at the second criminal trial. Moreover, unlike in *Foster*, Silverstein considered Gonzalez' relationship to the petitioner and determined that she would not make a good witness because a family member alibi witness is too easy to impeach on the basis of the legitimate question about how far a person may be willing to go to help a loved one. He made a reasonable strategic decision, therefore, to challenge the police investigation and the state's identification evidence, and not to call Gonzalez as an alibi witness. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . ." (Internal quotation marks omitted.) *Balbuena* v. *Commissioner of Correction*, 231 Conn. App. 289, 334, 332 A.3d 1008, cert. denied, 352 Conn. 905, 335 A.3d 845 (2025); see, e.g., id., 329–30 (rejecting claim that counsel failed to investigate petitioner's alibi defense when counsel's investigator spoke to witnesses and obtained statements from them, and counsel made reasonable tactical decision not to present alibi defense because witnesses' stories were different and some were nonresponsive). Accordingly, we reject the petitioner's argument that the habeas court improperly concluded that Silverstein

made a reasonable strategic decision not to present both the alibi and the misidentification defense.

C

Lastly, the petitioner argues, without citation to any supporting authority, that "reasonably competent counsel would have reconsidered the decision to present the alibi at around the time the state rested its case, in light of how the case had gone until that point." Specifically, the petitioner maintains that Silverstein "believed that, at the time the state rested its case at the second criminal trial, the petitioner was in a worse position than when the state had rested its case at the first criminal trial." Therefore, the petitioner contends that, given how the second criminal trial had progressed, Silverstein's decision not to change strategy was deficient. We are not persuaded.

As previously set forth in this opinion, "[o]ur review of an attorney's performance is especially deferential when his or her decisions are the result of relevant strategic analysis. . . . Thus, [a]s a general rule, a habeas petitioner will be able to demonstrate that trial counsel's decisions were objectively unreasonable only if there [was] no . . . . tactical justification for the course taken. . . . [T]he presentation of testimonial evidence is a matter of trial strategy. . . . Defense counsel will be deemed ineffective only when it is shown that a defendant has informed his attorney of the existence of a witness and that the attorney . . . without adequate explanation . . . failed to call the witness at trial. . . . Furthermore, [t]he failure of defense counsel to call a potential defense witness does not constitute ineffective assistance unless there is some showing that the testimony would have been helpful in establishing the asserted defense. . . .

"[O]ur habeas corpus jurisprudence reveals several scenarios in which courts will not second-guess defense counsel's decision not to investigate or call certain witnesses or to investigate potential defenses, such as when . . . counsel learns of the substance of the witness'

testimony and determines that calling that witness is unnecessary or potentially harmful to the case . . . . Thus, an attorney's choice to pursue a defense that focuses on casting doubt on the state's case rather than on calling his or her own witnesses can be a reasonable choice. . . . To support a defense argument that the prosecution has not proved its case it sometimes is better to try to cast pervasive suspicion of doubt than to strive to prove a certainty that exonerates." (Citation omitted; internal quotation marks omitted.) *Johnson* v. *Commissioner of Correction*, 166 Conn. App. 95, 140–41, 140 A.3d 1087 (2016), aff'd, 330 Conn. 520, 198 A.3d 52 (2019).

As previously noted in this opinion, Silverstein was aware of Gonzalez' testimony at the first criminal trial, he spoke with her, and he subpoenaed her to testify at the second criminal trial. He, however, ultimately decided that her testimony was unnecessary. Silverstein made a strategic choice to focus his defense on casting doubt on the state's case, rather than presenting a witness whom he felt would not help the defense.

In reviewing counsel's performance, we are required to be highly deferential to counsel's strategies and to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." (Internal quotation marks omitted.) *Spearman* v. *Commissioner of Correction*, 164 Conn. App. 530, 564, 138 A.3d 378, cert. denied, 321 Conn. 923, 138 A.3d 284 (2016). Upon our review of the record, we cannot conclude that the court incorrectly concluded that Silverstein's conduct in failing to present an alibi defense at the petitioner's second criminal trial did not constitute deficient performance.

II

We next turn to the petitioner's claim that the habeas court improperly excluded expert testimony related to Silverstein's allegedly deficient performance. Specifically, the petitioner argues that the court improperly

prevented Kestenband from testifying as to the standard of care for criminal defense attorneys. We disagree.

The following additional facts and procedural history are relevant to this claim. At the second habeas trial, the petitioner's counsel called Kestenband as a criminal defense expert to testify about the reasonableness of forgoing an alibi defense. During direct examination, the petitioner's counsel asked Kestenband the following hypothetical question: "I'm going to offer a hypothetical with a number of facts and do my best to get through them. So, assume that trial counsel is retained to represent a criminal defendant who received a hung jury his first trial and is facing a retrial. Counsel has the belief that a mistrial is not a favorable outcome. He's categorically not interested in hanging the jury. Counsel reviews the evidence and the general defense that was presented at the first trial. Counsel is aware that the defense presented an alibi at the first trial in addition to challenging that other identification evidence. Counsel is aware there was a hung jury but is not aware of what the split was. Counsel concludes that it's important to do something different or switch it up at the retrial. Counsel decides to focus on—focus his defense at the new trial in an attack on the adequacy of the police investigation into the allegations against the client. Counsel also seeks to, again, challenge some of that inferential identification of the witness at the first trial.

"Now, at the retrial, counsel's attempts to attack the adequacy of the police investigation, his primary new defense, are thwarted by objections by the state and rulings by the trial court such that he's mostly unable to pursue that defense. He doesn't get the jury instruction on the defense. [The] state does not call the key witness that he would have been able to make the expert on the investigation issue. Counsel has mixed success with challenging the identification testimony at the new trial. Counsel has the alibi witness ready and available to testify but had already made the decision before the trial to not present that witness in furtherance of his do

something differen[t] approach. Would not presenting the alibi under those circumstances be reasonable?"

The habeas court immediately instructed Kestenband not to answer the question. The respondent's counsel then objected on the basis that the question called for a legal conclusion. The court sustained the objection. The petitioner's counsel then asked Kestenband the following question: "Does the standard of care require counsel to present the alibi witness under those circumstances?" The respondent's counsel objected again on the same ground.

The following exchange then occurred between counsel and the court:

"[The Petitioner's Counsel]: I think he can offer an opinion about . . . .

"The Court: His opinion as to the ultimate conclusion, which is what I'm being asked to determine, which is whether he should have presented the alibi witness, is something an expert specifically cannot offer an opinion on."

On appeal, the petitioner argues that the court improperly excluded testimony from Kestenband because the hypothetical question that was objected to did not go to the ultimate issue before the court. Specifically, he asserts that "questions phrased in the form of a hypothetical cannot constitute [an] ultimate issue question because they are about hypothetical circumstances." Alternatively, he argues that "ultimate issue testimony was permissible because it would assist the trier of fact in resolving the issue in this case."[2] The petitioner further contends that the court's ruling was harmful because "the expert's answers to the long hypothetical questions were the most important piece of evidence in the case—

---

[2]The petitioner further argues that the court improperly sustained the objection of the respondent's counsel on the ground that the hypothetical was "extremely long." Because we conclude that the court did not abuse its discretion in sustaining counsel's objection on the ground that the question constituted impermissible testimony on the ultimate issue, we need not address this argument.

they would have allowed the petitioner to establish the standard of care, which is the heart of a claim of deficient performance." We are not persuaded.

We begin by setting forth our standard of review and the following applicable legal principles. "The well established standard of review for claims regarding the admissibility of expert testimony is abuse of discretion. . . . In determining whether there has been an abuse of discretion, the ultimate issue is whether the court could reasonably conclude as it did . . . . Expert testimony should be admitted when: (1) the witness has a special skill or knowledge directly applicable to a matter in issue, (2) that skill or knowledge is not common to the average person, and (3) the testimony would be helpful to the court or jury in considering the issues." (Citation omitted; internal quotation marks omitted.) *State* v. *Ruocco*, 151 Conn. App. 732, 745–46, 95 A.3d 573 (2014), aff'd, 322 Conn. 796, 144 A.3d 354 (2016).

It is equally well established that "a trial court's evidentiary rulings . . . will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice. . . . In reviewing claims that the trial court abused its discretion, great weight is given to the trial court's decision and every reasonable presumption is given in favor of its correctness. . . . We will reverse the trial court's ruling only if it could not reasonably conclude as it did." (Internal quotation marks omitted.) *Customers Bank* v. *Tomonto Industries, LLC*, 156 Conn. App. 441, 444, 112 A.3d 853 (2015). "To the extent [that] a trial court's admission of evidence is based on an interpretation of the [Connecticut] Code of Evidence, our standard of review is plenary. . . . We review the trial court's decision to admit evidence, if premised on a correct view of the law, however, for an abuse of discretion." (Internal quotation marks omitted.) Id., 445.

Section 7-2 of the Connecticut Code of Evidence provides in relevant part that a "witness qualified as an expert by knowledge, skill, experience, training,

education or otherwise may testify in the form of an opinion or otherwise concerning scientific, technical or other specialized knowledge, if the testimony will assist the trier of fact in understanding the evidence or in determining a fact in issue." Section 7-3 (a) of the Connecticut Code of Evidence provides in relevant part: "Testimony in the form of an opinion is inadmissible if it embraces an ultimate issue to be decided by the trier of fact, except that . . . other than as provided in subsection (b), an expert witness may give an opinion that embraces an ultimate issue where the trier of fact needs expert assistance in deciding the issue . . . ." "As the commentary to § 7-3 indicates, the rule adopts the common-law bar against admission of a witness' opinion on an ultimate issue in a case. . . . [T]he phrase 'ultimate issue' is 'not amenable to easy definition.' . . . [A]n ultimate issue [is] one that cannot 'reasonably be separated from the essence of the matter to be decided [by the trier of fact].' " (Citations omitted.) *State* v. *Finan*, 275 Conn. 60, 66, 881 A.2d 187 (2005), overruled on other grounds by *State* v. *Gore*, 342 Conn. 129, 269 A.3d 1 (2022).[3]

Section 7-4 of the Connecticut Code of Evidence provides: "(a) An expert may testify in the form of an opinion

___

[3] In *Gore*, our Supreme Court held that "opinion testimony that relates to the identification of persons depicted in surveillance video or photographs is not inadmissible solely because it embraces an ultimate issue. Lay opinion testimony identifying a person in surveillance video or photographs is admissible if that testimony meets the requirements of § 7-1 of the Connecticut Code of Evidence. That is, such testimony is admissible if the opinion is 'rationally based on the perception of the witness and is helpful to a clear understanding of the testimony of the witness or the determination of a fact in issue.' Conn. Code Evid. § 7-1. To the extent that this court's decision in *Finan* is inconsistent with the rule we adopt today, that decision and its progeny; see *State* v. *Holley*, [160 Conn. App. 578, 127 A.3d 221 (2015)]; *State* v. *Felder*, [99 Conn. App. 18, 912 A.2d 1054 (2007)]; are overruled." (Footnote omitted.) *State* v. *Gore*, supra, 342 Conn. 148–49.

Our Supreme Court in *Gore*, however, emphasized that "[its] narrow holding today is limited to the context of identifications of persons depicted in surveillance video or photographs. [It did] not address in this appeal whether [it] should abandon the ultimate issue rule in its entirety." Id., 135 n.7. In response to *Gore*, the commentary to the Connecticut Code of Evidence § 7-3 (a) has been amended and now provides

and give reasons therefor, provided sufficient facts are shown as the foundation for the expert's opinion.

"(b) The facts in the particular case upon which an expert bases an opinion may be those perceived by or made known to the expert at or before the proceeding. The facts need not be admissible in evidence if of a type customarily relied on by experts in the particular field in forming opinions on the subject. The facts relied on pursuant to this subsection are not substantive evidence, unless otherwise admissible as such evidence.

"(c) An expert may give an opinion in response to a hypothetical question provided that the hypothetical question: **(1)** presents the facts in such a manner that they bear a true and fair relationship to each other and to the evidence in the case; **(2)** is not worded so as to mislead or confuse the jury; and **(3)** is not so lacking in the essential facts as to be without value in the decision of the case. A hypothetical question need not contain all of the facts in evidence."

"[A]s a general rule, for a plaintiff to prevail in a legal malpractice case in Connecticut, he must present expert testimony to establish the standard of proper professional skill or care." (Internal quotation marks omitted.) *Grimm* v. *Fox*, 303 Conn. 322, 326 n.5, 33 A.3d 205 (2012). When a legal malpractice case is tried before a judge, rather than a jury, however, "the trial judge need not require the aid of expert testimony to understand the requisite standard of care or the reasonableness of the attorney's actions in the context of that standard." Id., 331. Expert testimony may not be necessary because, "[b]efore an expert may testify, the court must find that the expert has knowledge beyond that exhibited by every attorney simply as a result of membership in the legal profession. The expert must possess special knowledge that would *help the trier of fact* determine whether the

in relevant part: "The general bar to the admission of nonexpert and expert opinion testimony that embraces an ultimate issue, with certain exceptions, *remains intact*, following the decision in . . . *Gore* . . . ." (Emphasis added.)

defendant's conduct was in accordance with the standard of care applicable to attorneys under comparable circumstances. . . . [T]here may be no expert who knows more about the practice of law before the Superior Court than a judge of that court. Judges routinely rule on motions, preside at pretrial settlement conferences, conduct jury trials or sit as the trier of fact, among other things. . . . A judge, therefore, is aware of the standard of care that applies to attorneys practicing in the Superior Court." (Citations omitted; emphasis in original.) *Dubreuil* v. *Witt*, 80 Conn. App. 410, 421–22, 835 A.2d 477 (2003), aff'd, 271 Conn. 782, 860 A.2d 698 (2004).

In habeas cases, "[w]hile . . . expert testimony is not necessarily required in every case raising a *Strickland* inquiry . . . presenting expert testimony may help a petitioner carry his burden in demonstrating deficient performance." (Citation omitted.) *Ricardo R.* v. *Commissioner of Correction*, 185 Conn. App. 787, 802 n.8, 198 A.3d 630 (2018), cert. denied, 330 Conn. 959, 199 A.3d 560 (2019). "[N]ot every petitioner claiming ineffective assistance of counsel need present expert testimony, because as in some . . . professional malpractice cases, the acts complained of will be such that the triers of fact will be able to determine whether there has been ineffective assistance of counsel without need of expert testimony." *Evans* v. *Warden*, 29 Conn. App. 274, 282, 613 A.2d 327 (1992).

In the present case, the ultimate issue before the court was whether Silverstein's decision not to present the alibi testimony was reasonable based on the facts and circumstances of the present case as of the time of counsel's conduct. The hypothetical question objected to by the respondent's counsel cannot reasonably be separated from the essence of the ultimate issue that was before the habeas court, namely, whether the standard of care required Silverstein to present the alibi defense. We therefore cannot conclude that the court abused its

discretion in sustaining the respondent's objection to the hypothetical question posed by the petitioner's counsel.

The judgment is affirmed.

In this opinion the other judges concurred.